IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re UBS AUCTION RATE SECURITIES LITIGATION <br><br> This Document Relates To: <br><br> ALL ACTIONS | ) Master File No. 08-cv-02967 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| RANDOLPH BONNIST, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UBS AG, UBS SECURITIES LLC, and UBS FINANCIAL SERVICES INC., <br><br> Defendants. | ) <br> ) Case No. 1:08-cv-04352-THK <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT OF UBS ARS GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS,
APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL, AND
<u>CONSOLIDATION OF RELATED ACTIONS</u>**

Randolph Bonnist and Teachers Count (collectively "UBS ARS Group" or "Movant") have suffered significant losses as a result of their investments in auction rate securities marketed and sold by Defendants UBS AG, UBS Securities LLC and UBS Financial Services Inc. (collectively, "Defendants" or "UBS"). The UBS ARS Group believe it has suffered the largest losses of any movant, and, as such, it has the largest financial interest in the outcome of the

litigation. As the most adequate plaintiff, as defined by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the UBS ARS Group respectfully moves for its appointment as Lead Plaintiff. In addition, the UBS ARS Group respectfully moves the Court to approve its selection of Carey & Danis LLC as Lead Counsel.

## INTRODUCTION

Pursuant to Section 21D of the Securities Exchange Act of 1934 (The "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), and for the reasons set forth below, the UBS ARS Group respectfully moves this Court for an Order appointing it Lead Plaintiff on behalf of itself and all others similarly situated who, between May 8, 2003 and February 13, 2008, inclusive (the "Class Period"), purchased or otherwise acquired auction rate securities from UBS and incurred damages as a result of the Defendants' violations of the federal securities laws. Movant also seeks approval of its selection of the law firm of Carey & Danis, LLC ("Carey & Danis") to serve as Lead Counsel and for consolidation of all related actions.

A number of complaints have been filed in this Court against UBS for violations of 10(b) and 20(a) of the Exchange Act and Rule 10b-5. These complaints (the "Related Actions") are predicated on the collapse of the auction rate securities market, and Defendants' false and misleading statements about both the stability of that market and the riskiness of UBS' auction rate securities.

Movant suffered a collective loss of $ 1,095,000 during the class period, as a result of Defendants' misleading conduct. Movant is unaware at this time of any other movant with a greater loss. Thus, under Section 21D of the Exchange Act, Movant is presumptively the "most

adequate plaintiff" and should be appointed as lead plaintiff because it has "the largest financial interest in the relief sought by [the] class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Movant is represented in this action by Carey & Danis, which is seeking appointment as lead counsel and is eminently qualified to prosecute securities fraud claims such as this one.

## II.   BACKGROUND

The Related Actions allege that UBS violated the Securities Exchange Act of 1934 as a result of Defendants' false and misleading statements and omissions, which caused harm to UBS investors who purchased and continue to hold auction rate securities ("ARS") offered for sale by Defendants between May 8, 2003 and February 13, 2008, inclusive (the "Class Period").

According to the Complaint, Defendants represented to investors that ARS were "cash equivalents" or better than money market funds, and that these securities were highly liquid and for short-term investing. Defendants also represented that ARS were suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest. Defendants knew, but failed to disclose to investors, material facts about ARS. In particular, Defendants knew, but failed to disclose that these ARS were not cash alternatives, but were instead, complex, long-term financial instruments with 30-year maturity dates, or longer. Defendants knew, but failed to disclose that ARS were only liquid at the time of sale because Defendants were artificially supporting and manipulating the auction market to maintain the appearance of liquidity and stability. Defendants knew, but failed to disclose that ARS would become illiquid as soon as Defendants stopped maintaining the auction market.

Defendants also knew that the statements issued or disseminated about ARS were materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated in or acquiesced to the issuance or dissemination of such statements or documents as primary violations or the federal securities laws.  Defendants, by virtue of their receipt of information reflecting the true facts regarding the ARS market, their control over and/or their associations with the ARS market which made them privy to confidential proprietary information concerning the ARS market, participated in the fraudulent scheme alleged by Movant.  Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information that they caused to be disseminated to the investing public. The ongoing fraudulent scheme described could not have been perpetrated over a substantial period of time without the knowledge and complicity of senior UBS executives.  Defendants were motivated to materially misrepresent the true nature of the ARS auction market in order to: (i) attract new investors who would only invest in ARS if they believed a highly liquid auction market existed; (ii) unload ARS in their inventory to unsuspecting investors who believed they were purchasing a liquid investment; and (iii) continue collecting substantial fees for managing the ARS auctions on behalf of issuers.

On February 13, 2008, 87% of all auctions of ARS failed when Defendants and all other major broker-dealers refused to continue to support the auctions.  As a result of the withdrawal of support by all of the major broker-dealers, the market for ARS collapsed, leaving the holders of more than $300 billion in ARS with no means of liquidating investments Defendants offered and sold as a suitable alternative to money market funds and other short term cash management vehicles.

**III.    ARGUMENT**

As discussed below, the Related Actions should be consolidated, as the Court has already done with respect to the *Chandler v. UBS AG, et al.*, CA No. 08-CV-2967 (LMM) and *Sanchez v. UBS AG, et al.*, CA No. 08-CV-3082 (LMM) actions.[1]  Moreover, Movant satisfies each of the requirements of the PSLRA and is therefore qualified for appointment as Lead Plaintiff.  Additionally, the Court should approve Movant's selection of Lead Counsel.

### A.  The Court Should Consolidate the Related Actions

Class action securities suits are ideally suited for consolidation pursuant to Rule 42(a).  *See Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001).  Indeed, "in securities actions where the complaints are based on the same public statements and reports, consolidation is appropriate if there are common questions of law and fact and the parties will not be prejudiced." *Weltz*, 199 F.R.D. at 131.  The Court has already recognized this principle, in its recent order consolidating the *Chandler* and *Sanchez* actions.

The Related Actions present virtually identical factual and legal issues, as they all arise out of the same alleged scheme by defendants and all allege violation of the federal securities laws.  Each action has been filed pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, names UBS as a defendant, and arises from the same underlying facts and circumstances.  "The proper solution to problems caused by the existence of two or more cases involving the same parties and issues simultaneously pending in the same court would be to consolidate them under Rule 42(a)."  *Hargett v. Alley Fed. Sav. Bank*, 60 F.3d 754, 765 (11th Cir. 1995) (quoting *Miller v. United States Postal Serv.*, 729 F.2d 1033, 1036 (5th Cir. 1995)); *see also Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, 208 F.R.D. 59, 61 (S.D.N.Y. 2002); *Primavera*

---

[1] *See* Consolidation Order entered May 16, 2008, Flannery Decl. at Ex. D.

*Familienstiftgung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Because these actions are based on the same facts and involve the same subject matter, discovery obtained in one lawsuit will undoubtedly be relevant to all others. Consolidation of the related actions is thus appropriate as common questions of law and fact predominate these actions. Fed. R. Civ. P. 42(a). Thus, consolidation is appropriate here. Accordingly, the motion to consolidate the related actions should be granted.

### B. Movant Satisfies the Procedural Requirements for Appointment as Lead Plaintiff

Section 21D of the PSLRA, codified as 15 U.S.C. § 78u-4, establishes a procedure for the appointment of lead plaintiffs in "each private action arising under the [Exchange Act or Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." § 21D(a)(1), § 27(a)(1). First, the plaintiffs who file the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiffs. PSLRA § 21D(a)(3)(A)(i), 15 U.S.C. § 78u-4(a)(3)(A)(i). The first such notice here was published on March 21, 2008. *See* Declaration of Michael J. Flannery in Support of Motion of UBS ARS Group For Appointment as Lead Plaintiff, Approval of Selection of Lead Counsel and Consolidation of Related Actions ("Flannery Decl."), Ex. A.

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the actions have been consolidated, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." PSLRA § 21D(a)(3)(B)(i), 15 U.S.C. § 78u-4(a)(3)(B)(i).

The 60-day time period provided by the PSLRA in which applications for appointment as lead plaintiffs must be filed expires on May 20, 2008. Movant has moved within the statutory 60-day time period. The motion contains the required certifications setting forth, *inter alia*, Movant's transactions in UBS auction rate securities during the Class Period, and indicates that each member of the UBS ARS Group has reviewed a complaint filed in the Action and is willing to serve as a representative party on behalf of the Class. *See* Flannery Decl., Ex. B. In addition, Movant has selected and retained competent and experienced counsel, as set forth in counsel's resume. *See* Carey & Danis resume at Flannery Decl., Ex. C. As noted in the resume, the firm has developed an excellent reputation for successfully prosecuting class actions, including federal securities laws claims.

      C.    **Movant Satisfies the Legal Prerequisites for Appointment as Lead Plaintiff**

           **1. Movant is Presumptively the Most Adequate Plaintiff**

The PSLRA sets forth procedures for the appointment of lead plaintiff in class actions brought under the Exchange Act. 15 U.S.C. § 78u-4(a)(1). The PSLRA provides that this Court:

> Shall appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of the class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph.

15 U.S.C. § 78u-4(a)(3)(B)(i)(emphasis added). In adjudicating this motion, the Court must be guided by a presumption that the most adequate plaintiff is the person or group of persons who (a) filed the Complaint or made a motion to serve as lead plaintiff, (b) has the largest financial interest in the relief sough by the class, and (c) otherwise satisfies the requirements of Fed. R. Civ. P. 23 and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted by proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the

class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Movant satisfies each of these requirements. During the Class Period, Movant suffered losses of more than $ 1,095,000 from its members' purchases of UBS auction rate securities.[2] Movant believes it has the largest financial interest in the relief sought by the Class. The members of the UBS ARS Group are willing to actively participate in the leadership of this litigation through both personal involvement and consultation with its chosen counsel.

Moreover, because Movant possesses a significant interest in the outcome of this litigation, it is presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Movant is both qualified to represent the class and willing to serve as a representative party. In addition, Movant has selected counsel that is highly experienced in prosecuting securities class actions such as this one. Accordingly, Movant satisfies the requirements for appointment as Lead Plaintiff under the PSLRA and the instant motion should be granted.

### 2. Movant Satisfies the Requirements of Rule 23

In addition to requiring that the lead plaintiff have the largest financial interest, the PSLRA requires that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see also In re Elan Corp. Sec. Litig.*, 2002 WL 31720410, at *3 (S.D.N.Y. Dec. 3, 2002); *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002). Rule 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable; (2) there be questions of law or fact common to the class; (3) such claims be typical of those of the class; and (4) the representatives fairly and

---

[2] Copies of Movant's certifications are attached to the Flannery Decl. at Ex. B.

adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Typicality and adequacy of representation are the only provisions relevant to the determination of lead plaintiff under the PSLRA. *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 WL 1268013, at *4 (S.D.N.Y. June 6, 2002) (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) and *Weltz*, 199 F.R.D. at 133).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A "claim will meet the typicality requirement if 'each class member's claim arises from the same course of conduct, and each class member makes similar legal arguments to prove the defendants' liability.'" *Olsten*, 3 F. Supp. 2d at 296 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *see also Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 456 (D.N.J. 2000). The typicality standard is met even where minor distinctions exist. *Id.* As one court noted: "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. Complete identification between the claims constituting each individual action is not required." *Chisholm v. Transouth Fin. Corp.*, 184 F.R.D. 556, 563 (E.D. Va. 1999). The typicality requirement is plainly satisfied in the instant case where Movant seeks the same relief and advance the same legal theories as other class members.

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representation is adequate when "(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members do not have interests that are antagonistic to one another; and (3) the class has a sufficient interest in the

outcome of the case to ensure vigorous advocacy." *Weltz*, 199 F.R.D. at 133 (citing *Olsten*, 3 F. Supp. 2d at 296).

Movant is an adequate representative for the class. Each member of the UBS ARS Group purchased UBS auction rate securities during the Class Period and, like other putative class members, as a result of the Defendants' deliberate fraudulent and deceptive practices, suffered loss in the form of their illiquid and unavailable auction rate securities portfolio. Moreover, Movant has retained counsel highly experienced in prosecuting securities class actions vigorously and efficiently, and has timely submitted its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### D. The Court Should Approve the Movant's Selection of Carey & Danis as Lead Counsel

The PSLRA vests authority in the lead plaintiff or group of lead plaintiffs to select lead counsel, subject to approval by this Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, a court should not disturb the lead plaintiff's selection of counsel unless such interference is necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Carey & Danis to serve as Lead Counsel. As detailed in its firm resume,[3] Carey & Danis has extensive expertise and experience in the field of securities litigation and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Thus, the Court may be confident that the class will receive the highest caliber of legal representation in full compliance with the mandates of the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Albert Fadem Trust*, 239 F. Supp. 2d at 348

---

[3] A copy of Carey & Danis' firm resume is attached to the Flannery Decl. as Ex. C.

(approving as lead counsel law firm with "substantial experience and success in prosecuting securities fraud actions.").

## IV.   CONCLUSION

Based on the foregoing, Movant respectfully requests that the Court: (i) appoint it as Lead Plaintiff; (ii) approve Movant's selection of Carey & Danis as Lead Counsel; (iii) consolidate the Related Actions; and (iv) grant such other relief as the Court may deem to be just and proper.

Dated: May 20, 2008                    Respectfully submitted,

 _/s/ Joseph P. Guglielmo_____
Joe R. Whatley, Jr.
Edith M. Kallas
Joseph P. Guglielmo
WHATLEY, DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, NY 10036
Telephone: (212) 447-7070
Facsimile: (212) 447-7077

*Proposed Local Counsel*

Joseph P. Danis
Michael J. Flannery
Corey D. Sullivan
CAREY & DANIS, LLC
8235 Forsyth Blvd.
Suite 1100
St. Louis, MO   63105
Telephone: (314) 725-7700
Facsimile: (314) 721-0905

*Proposed Lead Counsel*

Edward M. Gergosian
GERGOSIAN & GRALEWSKI LLP

- 12 -

655 West Broadway
Suite 1410
San Diego, CA  92101
Telephone:  (619) 237-9500
Facsimile:  (619) 237-9555

A. Hoyt Rowell, III
Daniel O. Myers
T. Christopher Tuck
RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29464
Direct:  (843) 727-6500
Fax:  (843) 216-6509

***Attorneys for UBS ARS Group***

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2008, I electronically filed the **UBS ARS GROUP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTIONS** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

  /s/ Joseph P. Guglielmo_____
Joseph P. Guglielmo

*Proposed Local Counsel*