UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
In re UBS AUCTION RATE SECURITIES      )
LITIGATION                             )
                                       )    Master File No. 08-cv-02967
THIS DOCUMENT RELATES TO:              )
ALL ACTIONS                            )
                                       )
———————————————————————x

[*additional captions follow*]


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ARIC A. STREIT AND MARY STREIT AS TRUSTEES FOR THE BENEFIT OF THE STREIT LIVING TRUST FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL**

**MILBERG LLP**

Jerome M. Congress (JC-2060)
Kent A. Bronson (KB-4906)
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:    (212) 594-5300
Facsimile:    (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

**LAW OFFICES OF GEORGE A. SHOHET, A PROFESSIONAL CORPORATION**

George A. Shohet (not yet admitted *pro hac vice*)
245 Main Street, Suite 310
Venice, California 90291
Telephone:    (310) 452-3176
Facsimile:    (310) 452-2270
georgeshohet@gmail.com


**MILBERG LLP**

Jeff S. Westerman (not yet admitted *pro hac vice*)
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone:    (213) 617-1200
Facsimile:    (213) 617-1975
jwesterman@milberg.com


*Proposed Co-Lead Counsel for the Class*

435784_2

———————————————————————x

RANDOLPH BONNIST, Individually and On    )
Behalf Of Himself And All Others Similarly    )
Situated,    )
    )
                Plaintiff,    )    Case No. 08-cv-4352
    )
      vs.    )
    )
UBS AG, UBS SECURITIES LLC and UBS    )
FINANCIAL SERVICES, INC.,    )
    )
              Defendants.    )
    )
    )

———————————————————————x

RONALD D. KASSOVER, on behalf of himself    )
and all others similarly situated,    )
    )
              Plaintiff,    )
    )    Case No. 08-cv-02753
      vs.    )
    )
UBS AG and UBS FINANCIAL SERVICES,    )
INC.,    )
    )
              Defendants.    )
    )

———————————————————————x

435784_2

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................3

ARGUMENT ........................................................................................................................5

    I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES..........5

    II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS ...........................6

          A.     THE REQUIREMENTS OF THE PSLRA.................................................6

          B.     MOVANTS SATISFY THE LEAD PLAINTIFF REQUIREMENTS
                OF THE PSLRA ......................................................................................8

                1.     Movants Complied With The PSLRA, Are The Most Adequate
                        Plaintiffs Under the PSLRA, And Should Be Appointed Lead
                        Plaintiffs ........................................................................................8

                2.     Movants Have the Requisite Financial Interest in the Relief
                          Sought by the Class..........................................................................8

                  3.     Movants Otherwise Satisfy Rule 23 .............................................10

    III.    THE COURT SHOULD APPROVE MOVANTS' CHOICE OF MILBERG
          AND SHOHET AS CO-LEAD COUNSEL OF THE SECURITIES
          ACTIONS PURSUANT TO THE PSLRA AND AS INTERIM CO-LEAD
          COUNSEL OF THE IAA CLAIMS UNDER RULE 23......................................13

          A.     Milberg and Shohet Satisfy the Requirements Of the PSLRA.................13

          B.     Milberg and Shohet Satisfy the Requirements of Rule 23(g)...................14

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Air cargo Shipping Services Antitrust Litigation*,
    240 F.R.D. 56 (E.D.N.Y. 2006) ...................................................................................14

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ..................................................................................11

*Babcock v. Computer Associates International*,
    212 F.R.D. 126 (E.D.N.Y. 2003) .........................................................................11, 12

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ........................................................................8, 10, 13

*In re Cendant Corp. Litigation*,
    264 F.3d 201 (3d Cir. 2001)........................................................................................8

*Fischler v. Amsouth Bancorporation*,
    No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997)................10

*In re GMC Pick-Up Truck Fuel Tank Products Liability Litigation*,
    55 F.3d 768 (3d Cir. 1995)........................................................................................12

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ................................................................................7

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990)......................................................................................6

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ..................................................................................12

*Kirkpatrick v. J. C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ..................................................................................12

*Lax v. First Merchandises Acceptance Corp.*,
    No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ....................7, 10, 13

*Philips v. Joint Legislative Committee on Performance & Expenditure Review*,
    637 F.2d 1014 (5th Cir. 1981) ..................................................................................11

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ..........................................................................8, 11

*Priest v. Zayre Corp.*,
    118 F.R.D. 552 (D. Mass. 1988)...............................................................................11

*Rossini v. Ogilvy & Mather, Inc.*,
    798 F.2d 590 (2d Cir. 1986)..................................................................................11

## DOCKETED CASES

*In re Aetna Inc. Securities Litigation*,
    No. 01-CV-9796 (S.D.N.Y. filed Nov. 6, 2001)......................................................17

*In re Biovail Corp. Securities Litigation*,
    No. 03-cv-8917-GEL (S.D.N.Y. filed Nov. 12, 2003) ............................................16

*Bonnist v. UBS AG*,
    No. 1:08-CV-4352 (S.D.N.Y. filed May 8, 2008) ....................................................3

*Chandler v. UBS AG*,
    No. 1:08-CV-2967 (S.D.N.Y. filed Mar. 21, 2008)..................................................3

*In re Deutsche Telekom AG Securities Litigation*,
    No. 00-CV-9475 (S.D.N.Y. filed Dec. 13, 2000) ....................................................17

*In re Edison Schools, Inc., Securities Litigation*,
    No. 02-CV-3692 (S.D.N.Y. filed May 15, 2002) ....................................................17

*Green v. CMS Energy Corp.*,
    No. 02-CV-72004 (E.D. Mich. filed May 17, 2002) ...............................................16

*In re ImClone Systems, Inc., Derivative Litigation*,
    No. 02 Civ. 0163 (S.D.N.Y. filed Jan. 9, 2002)......................................................17

*In re Initial Public Offering Securities Litigation*,
    No. 01-mc-92 (S.D.N.Y. filed Aug. 9, 2001) .........................................................17

*In re Martha Stewart Living Omnimedia Inc., Securities Litigation*,
    No. 02-CV-6273 (S.D.N.Y. filed Aug. 6, 2002).....................................................17

*In re Nortel Networks Corp. Securities Litigation*,
    No. 01-CV-1855 (S.D.N.Y. filed Mar. 2, 2001)................................................16, 17

*Sanchez v. UBS AG*,
    No. 1:08-CV-3082 (S.D.N.Y. filed Mar. 26, 2008)..................................................3

*In re Sears, Roebuck & Co. Securities Litigation*,
    No. 02-CV-7527 (N.D. Ill. filed Oct. 18, 2002) .....................................................16

*Simon v. KPMG LLP*,
    No. 05-CV-03189 (D.N.J. filed June 24, 2005).......................................................16

*In re Tyco Securities Litigation*,
    No. 02-md-01335 (D.N.H. filed Aug. 23, 2002) .....................................................16

*In re Vodafone Group PLC Securities Litigation*,
 No. 02-CV-7592 (S.D.N.Y. filed Sept. 18, 2002) ...................................................................17

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a) ...............................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A) and (B) .....................................................................................7, 8

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................................7

15 U.S.C. § 78u4(a)(3)(B) ............................................................................................. *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...............................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..................................................................................13

15 U.S.C. § 78u-4(a)(3)(B)(v) ...............................................................................................13

15 U.S.C. §§ 78j(b) ..................................................................................................................3

17 C.F.R. § 240.10b-5 ..............................................................................................................3

Fed. R. Civ. P. 23 ....................................................................................................................6

Fed. R. Civ. P. 23(a) ..............................................................................................................10

Fed. R. Civ. P. 23(g) ..............................................................................................................14

Fed. R. Civ. P. 23(g)(1)(C)(i) .....................................................................................14, 15, 17

Fed. R. Civ. P. 23(g)(2)(A) ....................................................................................................15

Fed. R. Civ. P. 42(a) ............................................................................................................5, 6

## MISCELLANEOUS

Manual for Complex Litigation § 10.22 (4th ed. 2004)...........................................................14

Manual for Complex Litigation § 10.221 (4th ed. 2004).........................................................14

Class members Aric A. Streit and Mary Streit as trustees for the benefit of The Streit Living Trust ("Movants") respectfully submit this Memorandum of Law in support of their motion for an order: (i) consolidating the above-captioned actions; (ii) appointing Movants as Lead Plaintiffs pursuant to Section 21D of the Securities Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA (the "PSLRA") with respect to all claims brought under the Securities Exchange Act of 1934 (the "Exchange Act Claims"); (iii) approving Movants' selection of Milberg LLP ("Milberg") and the Law Offices of George A. Shohet, A Professional Corporation ("Shohet") as Co-Lead Counsel pursuant to the PSLRA with respect to the Exchange Act Claims; (iv) approving Movants' selection of Milberg and Shohet as Interim Co-Lead Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure with respect to all claims brought under the Investment Advisers Act, 15 U.S.C. § 80b-1; and (v) granting such other and further relief as the Court may deem just and proper.

Movants have a total of $20.3 million of auction rate securities (sometimes referred to using the acronym "ARS") frozen in their two accounts at UBS.   In one of those accounts they have $3.45 million in ARS holdings that were purchased through another broker/dealer and transferred to UBS.  Thus, the Movants have $16,850,000 that were purchased directly through Defendants.

The ARS were falsely marketed as highly liquid, cash equivalents.  Indeed, they have been illiquid since February 13, 2008, as a result of the manifestation of risks previously concealed by UBS from Movants and the Class.  Because their ARS are not the cash equivalents UBS represented them to be, Movants borrowed over $10 million from UBS secured by *all* of their $20.3 million in ARS holdings. *See* Declaration of Kent A. Bronson in Support of the Motion of Aric A. Streit and Mary Streit as Trustees for the Benefit of The Streit Living Trust

for Consolidation, Appointment as Lead Plaintiffs and Approval of Selection of Co-Lead

Counsel (the "Bronson Decl.") Ex. A, Schedule A, p.35.

      Thus, in addition to paying UBS millions for ARS that are illiquid, Movants incurred a

$10 million debt obligation to the Defendants who defrauded them, at an interest rate that

effectively resulted in the Movants paying the Defendants to get their own money back.  Because

the Streits' ARS holdings are frozen and of uncertain value, and they had to incur the liability of

borrowing $10 million for liquidity, their financial interest under the PSLRA is, at a minimum,

approximately $26,850,000.

      Movants appear to have the largest financial interest in the outcome of this litigation, and

otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  For these

reasons, they believe that they are the "most adequate plaintiffs" to lead the litigation and their

selection of lead counsel should be approved.  Movants further submit that appointing the same

Lead Counsel for purposes of both the Exchange Act and Investment Advisers Act claims is

appropriate because of the overlap of factual issues between these claims.[1]  The discovery in all

four actions will be the same.  Because Movants and the other class members have claims under

both statutes, Movants will shortly be filing a complaint against Defendants asserting claims

under both the Exchange Act and the Investment Advisers Act.

---

[1]  Defendants are UBS AG, UBS Securities LLC ("UBS Securities") and UBS Financial
Services, Inc. ("UBS Financial") (collectively referred to as "Defendants" or "UBS").  The
Exchange Act Actions name UBS AG, UBS Securities and UBS Financial as Defendants.  The
IAA Action names UBS AG and UBS Financial as Defendants.

**INTRODUCTION**[2]

As of May 20, 2008, four related actions had been filed in this District on behalf of a class of purchasers of ARS held in UBS accounts (the "Actions").  Two of those cases have already been consolidated for all purposes.  All but one of the Actions allege violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder (the Exchange Act Actions") on behalf of a class who purchased or otherwise acquired their UBS ARS between March 21, 2003 and February 13, 2008.[3]  The remaining Action asserts violations of 15 U.S.C. § 80b-1§ of the Investment Advisers Act of 1940 (the "Investment Advisor Act Action" or the "IAA Action") on behalf of a class who purchased or otherwise acquired their UBS ARS between March 14, 2002 to the present.  The Exchange Act Actions and the IAA Action arise from the same facts and circumstances.

All of the Actions allege that Defendants knew, but failed to disclose, material facts while marketing ARS to class members.  Defendants falsely represented that these securities were highly liquid cash equivalents, similar to money market funds or certificates of deposit (CDs), and completely safe.   As such, the holdings were unlawfully represented as suitable for risk-averse people and businesses needing ready access to their cash.  Defendants falsely marketed

---

[2] The facts set forth here include the facts alleged in the complaints in the Actions as well as information obtained through Movants' counsels' own investigation.

[3] The Exchange Act Actions are *Chandler v. UBS AG*, No. 1:08-CV-2967 (S.D.N.Y. filed Mar. 21, 2008) (LMM); *Sanchez v. UBS AG*, No. 1:08-CV-3082 (S.D.N.Y. filed Mar. 26, 2008) (LMM); and *Bonnist  v. UBS AG*, No. 1:08-CV-4352 (S.D.N.Y. filed May 8, 2008). On May 16, 2008 the Court consolidated the *Chandler* and *Sanchez* cases under the caption *In re UBS Auction Rate Securities Litigation*, Master File 08-CV-02967.

ARS as desirable because they earned slightly higher interest rates or dividends over other cash alternatives. Class members were typically promised that they could obtain a return of their monies by liquidating these holdings every 7, 28 or 35 days.

In fact, Defendants knew that (a) these securities were not cash equivalents or suitable alternatives to money market funds or CDs; (b) continuing liquidity was uncertain because it depended substantially, if not completely, on Defendants artificially supporting the ARS auctions and market; (c) in fact no real market for these securities could or would exist, and most if not all of the auctions for these securities would be overwhelmingly, if not completely, doomed to failure, were it not for Defendants' and other broker-dealers' constant and pervasive support and propping up of these auctions by always, or nearly always, serving as buyers of last resort for these securities; and (d) these securities would (and did) in fact become illiquid as soon as Defendants ceased their routine and pervasive artificial support for the ARS auction market.

On February 13, 2008, the Streits and other class members were devastated by the sudden collapse of the ARS market due to the failure of almost 90% of all auctions caused by Defendants' misconduct.  Over $300 billion in ARS holdings became illiquid because Defendants will no longer support the auction process they devised.  Numerous class members are experiencing life-changing hardship given the inability to tap significant sums of their own money.  In some cases large portions (or all) of their life savings are frozen, while in others monies urgently needed for medical expenses, tax obligations, home purchases and the like are inaccessible.

Movants have frozen ARS holdings of $20.3 million ($16.85 million purchased directly from UBS) and collateralized borrowings from Defendants of over $10 million.  Because of the extent of their ARS holdings and collateralized loan, the Streits have a powerful financial

incentive to recover the full value of their holdings from the Defendants. The Streits have submitted a certification signed by both of them demonstrating their desire to serve as the Lead Plaintiffs. *See* Bronson Decl., Ex. A. They should be appointed to do so by the Court. [4]

To the best of their knowledge, Movants' losses represent the largest financial interest of any Class member seeking to be appointed as Lead Plaintiff. Movants are not aware of any other class member who filed an action or filed an application for appointment as Lead Plaintiff that sustained greater losses. In addition, Movants satisfy the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure. Thus, Movants are presumptively the most adequate plaintiffs and should be appointed Lead Plaintiffs in these Actions.

## ARGUMENT

### I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). The Actions each assert class claims on behalf of those who purchased or otherwise acquired ARS that were marketed, sold and/or underwritten by Defendants during the Class Period for alleged violations of the Exchange Act and/or Investment

---

[4] The financial interest of Movants in the litigation is not the same as their legally compensable damages, which measurement is often a complex legal question that cannot be determined at this stage of the litigation. As discussed more fully below, these actions are different from the typical PSLRA action in which plaintiffs' total loss is reflected in the drop in the market price of the security at issue on a stock exchange. Here the securities were not traded on an exchange, and the gravamen of plaintiffs' allegations is that Defendants failed to disclose that ARS were not cash equivalents and that their continuing liquidity was very uncertain. In these cases, investors were harmed in several ways because, *inter alia*, (i) they overpaid for their ARS and received an inadequate rate of interest for a non-cash equivalent security, (ii) their holdings have now become illiquid, and (iii) the value of the ARS is impaired and was even written down by Defendants due to the lack of a market for the securities. The relative financial interests for lead plaintiff status can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and the information concerning the current market for the securities.

Advisers Act during the Class Periods. The Actions each name UBS AG and UBS Financial as Defendants, and all of the Exchange Act actions name UBS Securities as a defendant as well. Each case involves the same factual issues, namely, whether plaintiffs purchased or otherwise acquired ARS that were marketed, sold and/or underwritten by Defendants during the Class Periods as a result of Defendants' allegedly false and misleading statements. All but *Kassover* involve the same legal issues, i.e., whether Defendants' conduct violates Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. *Kassover* is based on the Investment Advisers Act, but relies on the same evidence as the other cases in support of their claims.

Consolidation is appropriate when, as here, there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here, as this Court has already recognized with respect to the Securities Actions in consolidating the *Chandler* and *Sanchez* cases. Given the virtually complete factual overlap with *Kassover*, it is appropriate to consolidate that case as well. Therefore, the Actions should be consolidated.

## II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS

The Streits, suing in their capacity as trustees for the benefit of The Streit Living Trust, should be appointed Lead Plaintiffs in the Exchange Act Actions because they complied with all of the PSLRA's requirements, are believed to have the largest financial interest in this litigation, and otherwise meet the relevant requirements of Fed. R. Civ. P. 23.

### A.    THE REQUIREMENTS OF THE PSLRA

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(l) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The plaintiff in the first-filed, above-captioned action alleging violations of the Exchange Act caused notice to be published pursuant to the PSLRA on *Business Wire* on March 21, 2008.[5]

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Finally, within 90 days after publication of the initial notice of pendency, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:

(aa) has either filed the complaint or made a motion in response to a notice . . .

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

---

[5] *See* Bronson Decl., Ex. B. National news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004).

### B. MOVANTS SATISFY THE LEAD PLAINTIFF REQUIREMENTS OF THE PSLRA

#### 1. Movants Complied With The PSLRA, Are The Most Adequate Plaintiffs Under the PSLRA, And Should Be Appointed Lead Plaintiffs

Movants' instant application is filed within the time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), which expires on May 20, 2008.  Movants reviewed the allegations in the instant action against Defendants and are willing to serve as a representatives on behalf of the class.  *See* Bronson Decl., Ex. A.  In addition, Movants selected and retained highly experienced and competent counsel to represent them and the class. *See* Bronson Decl., Exs. C and D (attaching firm résumés of Milberg and Shohet).

Accordingly, Movants satisfy the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and their application for appointment as Lead Plaintiffs, and selection of Milberg and Shohet as Co-Lead Counsel, should be approved by the Court.

#### 2. Movants Have the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the Class member who represents the largest financial interest in the relief sought by the action.  *See In re Cavanaugh*, 306 F.3d. at 730 ("[T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (identification of the most adequate

plaintiff, "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'") (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)).

In securities cases brought pursuant to the PSLRA, the relative financial interest of lead plaintiff movants is often measured by the difference between the class-period purchase price of the securities on the one hand, and sale price of the securities subsequent to disclosure of Defendants' materially false and misleading statements on the other. The cases at bar are different because the gravamen of plaintiffs' allegations is that Defendants failed to disclose that ARS were not cash equivalents and that their continuing liquidity was very uncertain. In these cases, investors were harmed when their investments became illiquid. Unlike many securities cases, the ARS were traded at auctions, not on a stock or board exchange. Investors were harmed because they cannot access and use their own money, the value of their holdings is uncertain and was written down by the Defendants, the purported values of the ARS were inflated by Defendants' deception, and interest rates on the ARS were much lower than market rates for securities that were not cash equivalents.

During the Class Period, as evidenced by, among other things, the accompanying signed Certification (*see* Bronson Decl., Ex. A), the Movants purchased a total of $16,850,000.00 in ARS from Defendants that are currently held by Movants, and were injured thereby. Also pertinent to their financial interest is the fact that, because their ARS are not the cash equivalents UBS previously represented them to be, Movants had to borrow $10 million from UBS secured by all their ARS purchased from or through UBS as well as the ARS in their UBS accounts originally purchased through a different broker/dealer. Thus, in addition to paying $16,850,000.00 for ARS from UBS that are now illiquid, Movants now owe the very Defendants

who defrauded them a $10 million debt obligation Movants would not have incurred but for

Defendants' fraud, giving Movants a financial interest of almost $27 million.

Therefore, Movants satisfy all of the PSLRA's prerequisites for appointment as Lead

Plaintiffs in this action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C.

§ 78u4(a)(3)(B).

### 3.    Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the Lead Plaintiff must also "'otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *See In re Cavanaugh*, 306

F.3d. at 730. Rule 23(a) provides that a party may serve as a class representative if the following

four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is
> impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical
> of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the
> interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy --

directly address the personal characteristics of the class representative.  Consequently, in

deciding a motion for Lead Plaintiff, the Court should limit its inquiry to the typicality and

adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the

motion for class certification.  *See id.*; *see also Lax v. First Merchs. Acceptance Corp.*, 1997 U.S.

Dist. LEXIS 11866, at *20 (N.D. Ill. August 11, 1997); *Fischler v. Amsouth Bancorporation*,

No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412. As detailed below, Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby further justifying its appointment as Lead Plaintiffs.

### a.  Movants Fulfill the Typicality Requirements

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *see also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). The requirement that the proposed class representative's claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412; *Philips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citation omitted). Since the plaintiffs seek to prove that Defendants "committed the same unlawful acts in the same method against an entire class . . . all members of this class have identical claims . . . . [t]herefore, the certification of the suit as a class action

satisfied the requirements of Rule 23(a)(3)." *Kennedy v. Tallant,* 710 F.2d 711,717 (11th Cir. 1983).

Movants seek to represent a class of purchasers of UBS ARS that have virtually identical, non-competing and non-conflicting interests. Movants satisfy the typicality requirement because, as with all other class members, they: (1) purchased or otherwise acquired UBS ARS during the Class Periods set out in the complaints; (2) purchased or otherwise acquired UBS ARS on terms that were inappropriate for a non-cash equivalent investment as a result of the same allegedly materially false and misleading statements and/or omissions; and (3) suffered economic loss thereby when the market for ARS collapsed and the ARS became illiquid. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members are identical or substantially similar and arise out of the same course of events.

### b.     Movants Fulfill the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the class to the existence of any conflicts between the interest of Movants and the other members of the class. Thus the standard for adequacy is met if it appears that (1) the named plaintiff has interests in common with, and not antagonistic to, the class's interests; and (2) the plaintiff's attorneys are qualified, experienced and generally able to vigorously conduct the litigation. *See, e.g., Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995); *Babcock*, 212 F.R.D. at 131 (citation omitted).

As detailed above, Movants are adequate representatives of the class because they share common questions of law and fact with the members of the class and their claims are typical of the claims of other class members. As evidenced by the injury suffered by Movants, who

acquired $16,850,000.00 in ARS from UBS during the Class Period that they continue to hold, pursuant to materially false and misleading statements and/or omissions, the interests of Movants are clearly aligned with the interests of the members of the class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the class.

Further, Movants took significant steps demonstrating that they will continue to protect the interests of the class: they executed a Certification detailing their Class Period transactions and expressing their willingness to serve as Lead Plaintiffs; they moved this Court to be appointed as Lead Plaintiffs in this action; and they retained competent and experienced counsel who, as shown below, will vigorously conduct this complex litigation in a professional and efficient manner. *See generally Lax*, 1997 U.S. Dist. LEXIS 11866, at \*21-25.

## III.    THE COURT SHOULD APPROVE MOVANTS' CHOICE OF MILBERG AND SHOHET AS CO-LEAD COUNSEL OF THE SECURITIES ACTIONS PURSUANT TO THE PSLRA AND AS INTERIM CO-LEAD COUNSEL OF THE IAA CLAIMS UNDER RULE 23[6]

### A.    Milberg and Shohet Satisfy the Requirements Of the PSLRA

Movants' choice of Co-Lead Counsel satisfies the requirements of the PSLRA. Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class. The Court should not disturb the Lead Plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See also In re Cavanaugh*, 306 F.3d 726. Movants selected and retained

---

[6] As stated above, it would be most efficient to appoint the same Co-Lead Counsel for the Investment Advisers Act claim and the securities claims because of the overlap of factual issues between them.  The discovery in all four actions will be the same.  Movants will shortly be filing a complaint against Defendants asserting claims under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 as well as under the Investment Advisers Act.

Milberg and Shohet to serve as Co-Lead Counsel for the class. [7]  These firms possess extensive experience litigating securities class actions and have both successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Bronson Decl., Exs. C and D.  Thus, the Court may be assured that by approving Movants' choice of Co-Lead Counsel, the class will receive the highest caliber of legal representation.

### B.    Milberg and Shohet Satisfy the Requirements of Rule 23(g)

With respect to the Investment Advisor Act claim, Movants also seek the appointment of Milberg and Shohet as Interim Co-Lead Counsel to act on behalf of the putative class pursuant to Fed. R. Civ. P. 23(g).  In determining Interim Co-Lead Counsel, the court should "conduct an independent review … to ensure that counsel appointed to leading roles are qualified and responsible, that they will fairly and adequately represent all of the parties on their side, and that their charges will be reasonable."  Manual for Complex Litigation § 10.22 (4th ed. 2004).  Indeed, the most important factor is "achieving efficiency and economy without jeopardizing fairness to parties."  *Id*. at § 10.221.  When appointing interim lead counsel, it is "generally accepted that the considerations set out in Rule 23(g)(1)(c), which governs appointment of class counsel once a class is certified, apply equally to the designation of interim class counsel before certification."  *In re Air cargo Shipping Servs. Antitrust Litig*., 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

Fed. R. Civ. P. 23(g)(1)(c)(i) specifies that in appointing class counsel, the court must consider:

- the work counsel has done in identifying or investigating potential claims in the action,

---

[7] Movants were advised that Milberg, and three former named partners (who are no longer with the firm) were indicted, and that the former partners pled guilty while the firm pled innocent. Movants were also advised about the nature of the charges and the status of those proceedings.

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
- counsel's knowledge of the applicable law, and
- the resources counsel will commit to representing the class.

Movants submit that appointment of Milberg and Shohet as the Interim Co-Lead Counsel satisfies the requirements of Fed. R. Civ. P. 23(g)(1)( C)(i).  Plaintiffs further request that the proposed Lead Counsel be appointed pursuant to Fed. R. Civ. P. 23(g)(2)(A), which provides for the designation of interim class counsel to act on behalf of a putative class before the determination of whether to certify the action as a class action.

The first Fed. R. Civ. P. 23 (g)(1)(C)(i) consideration, which focuses on the work counsel has done to advance the litigation, strongly favors Plaintiffs' counsel.  Milberg and Shohet have dedicated substantial resources to advancing the case by extensively investigating UBS's alleged wrongdoing (Milberg employs a number of full-time private investigators), reviewed court actions and pleadings, as well as media and other reports.  Based on the firms' prior experience in bringing and pursuing complex claims such as those asserted here, the proposed Interim Co-Lead Counsel fully understands the substantial investment of time and resources necessary to properly pursue and lead the instant action, and is committed to making the necessary investment in this case.

The second and third Fed. R. Civ. P. 23(g)(1)( C)(i) factors, which address counsel's relevant class action experience and knowledge of applicable law, also strongly favor Milberg and Shohet, which are uniquely qualified to lead this prosecution on behalf of participants in the Plan.  Both firms are highly regarded and experienced in prosecuting complex and class action litigation with a well-known record of success pursuing financial, accounting, and securities fraud matters which are highly relevant to this litigation and successfully litigated many other class action claims.  *See* Bronson Decl., Exhibits C and D.

In addition, Milberg often takes a leading role among law firms in pursuing securities fraud claims on behalf of investors and has obtained substantial recoveries. Just this past year, Milberg was ranked number one for recoveries totaling approximately $3,804,625,000. *See* http://slw.riskmetrics.com/2008/03/the_scas_50_for_2007.html.

In the past two years alone, Milberg successfully settled and received preliminary and/or final approval for settlement in many complicated class actions. For example, on December 26, 2006, Milberg settled a case against Nortel Networks Corp. for cash and stock valued at $1.32 billion. *In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855 (S.D.N.Y. filed Mar. 2, 2001) (Berman, J.). In June 16, 2006, Milberg achieved settlement and final approval of settlement with KPMG for $225 million. *Simon v. KPMG LLP*, No. 05-CV-03189 (D.N.J. filed June 24, 2005). On January 10, 2007, Milberg received final court approval of a settlement with Sears for $215 million. *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-CV-7527 (N.D. Ill. filed Oct. 18, 2002). In September 2007, Milberg settled the *CMS Energy* securities litigation for $200 million. *Green v. CMS Energy Corp.*, No. 02-CV-72004 (E.D. Mich. filed May 17, 2002). And just recently, Judge Lynch preliminarily approved a settlement with Biovail Corporation for $138 million where Milberg is co-lead counsel. *In re Biovail Corp. Sec. Litig.*, No. 03-cv-8917-GEL (S.D.N.Y. filed Nov. 12, 2003).

Significantly, on December 19, 2007, Judge Paul Barbadoro of the District of New Hampshire granted final approval of a $3.2 billion settlement of investor claims involving Tyco International, Ltd. Milberg was Co-lead counsel for plaintiffs in the *Tyco* litigation and worked to achieve the largest cash payment ever made by a corporate defendant in the history of U.S. securities litigation, and the second-largest auditor settlement in securities class action history. *In re Tyco Sec. Litig.*, No. 02-md-01335 (D.N.H. filed Aug. 23, 2002).

Milberg also achieved tremendous results litigating cases in this District. The number and names of cases that Milberg has successfully litigated in this District are too long to list here, but some recent examples of successful results are: *In re Initial Public Offering Securities Litigation*, No. 01-mc-92 (S.D.N.Y. filed Aug. 9, 2001) (Scheindlin, J.); *In re Nortel Networks Corp. Securities Litigation*, No. 01-CV-1855 (S.D.N.Y. filed Mar. 2, 2001) (Berman, J.); *In re Martha Stewart Living Omnimedia Inc., Securities Litigation*, No. 02-CV-6273 (S.D.N.Y. filed Aug. 6, 2002) (Sprizzo, J.); *In re Edison Schools, Inc., Securities Litigation*, No. 02-CV-3692 (S.D.N.Y. filed May 15, 2002) (Sprizzo, J.); *In re Vodafone Group PLC Securities Litigation*, No. 02-CV-7592 (S.D.N.Y. filed Sept. 18, 2002) (Hellerstein, J.); *In re Aetna Inc. Securities Litigation*, No. 01-CV-9796 (S.D.N.Y. filed Nov. 6, 2001) (Katz, J.); *In re ImClone Systems, Inc., Derivative Litigation*, No. 02 Civ. 0163 (S.D.N.Y. filed Jan. 9, 2002) (Owen, J.); and *In re Deutsche Telekom AG Securities Litigation,* No. 00-CV-9475 (S.D.N.Y. filed Dec. 13, 2000) (Buchwald, J.).

The final Fed. R. Civ. P. 23(g)(1)(C)(i) factor, which concerns the resources counsel will commit to the case, also strongly supports appointment of Milberg and Shohet as the Interim Lead Counsel. Milberg and Shohet are well-established and successful law firms that have the resources necessary to pursue a case of this magnitude. Both firms have a proven track record of managing securities litigation and will dedicate the resources necessary to represent zealously the interests of the class members in this action.

## **CONCLUSION**

For the reasons stated above, Movants satisfy the requirements of the PSLRA and are the most adequate plaintiffs in this action, and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. § 78u-4(a)(3)(B). As the most adequate plaintiffs, Movants respectfully request that the Court: (1) consolidate the related actions; (2) appoint Movants as Lead Plaintiffs pursuant to the

PSLRA; (3) approve Movants' selection of Milberg and Shohet as Co-Lead Counsel in this action and in any subsequently filed and/or related cases; (4) appoint Milberg and Shohet as Interim Co-Lead Counsel of the Investment Advisors Act Claims under Rule 23(g); and (5) grant such other and further relief as the Court may deem just and proper.

Dated:  May 20, 2008                     Respectfully submitted,

                                         **MILBERG LLP**

                                         By: /s/ Kent A. Bronson
                                         Jerome M. Congress (JC-2060)
                                         Kent A. Bronson (KB-4906)
                                         One Pennsylvania Plaza, 49th Floor
                                         New York, New York 10119
                                         Telephone:     (212) 594-5300
                                         Facsimile:     (212) 868-1229
                                         jcongress@milberg.com
                                         kbronson@milberg.com

                                         **MILBERG LLP**
                                         Jeff S. Westerman (not yet admitted *pro hac vice*)
                                         300 South Grand Avenue, Suite 3900
                                         Los Angeles, California 90071
                                         Telephone:     (213) 617-1200
                                         Facsimile:     (213) 617-1975
                                         jwesterman@milberg.com

                                         **LAW OFFICES OF GEORGE A. SHOHET, A**
                                         **PROFESSIONAL CORPORATION**
                                         George A. Shohet (not yet admitted *pro hac vice*)
                                         245 Main Street, Suite 310
                                         Venice, California 90291
                                         Telephone:     (310) 452-3176
                                         Facsimile:     (310) 452-2270
                                         georgeshohet@gmail.com

                                         *Proposed Co-Lead Counsel for the Class*

                                         **KRIENDLER & KRIENDLER LLP**
                                         Gretchen M. Nelson (not yet admitted *pro hac vice*)
                                         707 Wilshire Boulevard, Suite 4100

Los Angeles, CA  90017
Telephone:     (213) 622-6469
Facsimile:      (213) 622-6019
gnelson@kriendler.com

*Other Counsel for Movants*