# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re UBS AUCTION RATE SECURITIES LITIGATION | ) ) ) | Master File No. 08-CV-02967 |
| This Document Related To: All Actions | ) ) ) ) ) | |
| | ) ) | |
| RANDOLPH BONNIST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Case No. 08-CV-04352 (UA) |
| Plaintiff, | ) ) ) | |
| -   against - | ) ) ) | |
| UBS AG, UBS SECURITIES LLC and UBS FINANCIAL SERVICES, INC. | ) ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CHANDLER GROUP FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 4

    I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ......... 5

    II.     THE CHANDLER GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .... 5

          A.     The Procedure Required By the PSLRA ................................................... 6

          B.     The Chandler Group Satisfies The Lead Plaintiff Requirements Of The PSLRA ...................................................................................................... 7

                1.     The Chandler Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff ........................................................... 7

                2.     The Chandler Group Have The Requisite Financial Interest In The Relief Sought By The Class .................................................... 7

                3.     The Chandler Group Otherwise Satisfy Rule 23 ............................ 9

                4.     Aggregation of The Chandler Group's Financial Interests Is Appropriate ..................................................................................... 11

    III.    THE CHANDLER GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED ............................................................................................... 13

CONCLUSION ................................................................................................. 14

## TABLE OF AUTHORITIES

**Case**                                                                                    **Page**

*Albert Fadem Trust v. Citigroup, Inc.,*
    239 F. Supp. 2d 344 (S.D.N.Y. 2002).......................................................................... 7, 10

*In re American Bank Note Holographics Secs. Litig.,*
    93 F. Supp. 2d 424 (S.D.N.Y. 2000)................................................................................ 12

*In re Cavanaugh,*
    306 F.3d 726 (9th Cir. 2002) ............................................................................................ 7

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001).............................................................................................. 7

*In re Centerline Holding Co. Sec. Litig.,*
    2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008) ................................................. 12

*In re Fuwei Films Sec. Litig.,*
    247 F.R.D. 432 (S.D.N.Y. 2008) ....................................................................... 7, 8, 10, 11

*In re Tarragon Corp. Sec. Litig.,*
    2007 U.S. Dist LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ................................................. 12

*Johnson v. Celotex Corp.*
    899 F. 2d 1281 (2d Cir. 1990)……………………………………..…………………….5

*Kaplan v. Gelfond*
    240 F.R.D.  (S.D.N.Y. 2007)..……………………………………..…………………….5

*Lax v. First Merchs. Acceptance Corp.,*
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. 1997) .................................................................. 8

*Reimer v. Ambac Fin. Group, Inc.,*
    2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008) ................................................. 12

*Vladimir v. Bioenvision,*
    2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007) ............................................... 12

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) .................................................................................... 12

**<u>Statutes</u>**

15 U.S.C. § 78u-4(a) ................................................................................. passim

Fed. R. Civ. P. 23 .........................................................................................5, 6, 9, 10

Fed. R. Civ. P. 42(a) ………………………………………………………………...1, 4, 5

TABLE OF AUTHORITIES

## INTRODUCTION

Plaintiffs David and Shelly Chandler, and class members Robert Bee, Edward Taras, Larry S. Watanabe, David Ghiz, and M. Richard Goldberg (collectively, the "Chandler Group" or "Movants") move this Court for entry of an order:  (1) consolidating the related actions before the Court; (2) appointing them Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and; (3) approving their selection of Girard Gibbs LLP ("Girard Gibbs") to serve as Lead Counsel, Stueve Siegel Hanson LLP ("Stueve Siegel") to serve as Co-Lead Counsel, and Seeger Weiss LLP ("Seeger Weiss") to serve as Liaison Counsel pursuant to the PSLRA.

At a conference with the Chandler Group's counsel on May 6, 2008, the Court ordered the consolidation of two related actions *Chandler v. UBS AG, et al.*, 08-cv-02967, and *Sanchez v. UBS AG, et al.*, 08-cv-03082, under the caption *In re UBS Auction Rate Securities Litigation*, Case No. 08-cv-02967.  Now, the Court must decide whether to consolidate another related action, *Bonnist v. UBS AG, et al.*, Case No. 08-cv-04352, with these cases.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  As soon as practicable after a decision on consolidation has been rendered, the Court must appoint as the Lead Plaintiff the movant or group of movants with the largest financial interest of those seeking such appointment in the litigation and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  *See id.*

The Chandler Group submits that the above-captioned actions should be consolidated because they each involve the same defendants and substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a).  The Chandler Group further submits that it should be appointed Lead Plaintiff because it:  (1) timely filed a motion for appointment of Lead Plaintiff; (2) has a substantial financial interest in the action, as its members collectively purchased and held $31,675,083 worth of auction rate securities from UBS AG, UBS Securities LLC and UBS Financial Services Inc. (collectively "UBS") during the Class Period, and in light of recent issuer redemptions, currently holds $28,475,083 of these securities; and (3) will adequately represent the interests of the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Because the presumptive Lead

1

Plaintiff selects counsel to represent the class under the PSLRA, and Girard Gibbs, Stueve Siegel and Seeger Weiss are experienced in the prosecution of securities class actions and will adequately represent the interests of Class members, the Court should also approve the Chandler Group's selection of counsel to represent the Class.

## FACTUAL BACKGROUND

This litigation arises out of "the hostage crisis otherwise known as the auction-rate securities market." Gretchen Morgenson, "How to Clear a Road to Redemption," *New York Times* (May 4, 2008).[1] As the *New York Times* explained earlier this month, "Some $300 billion worth of investors' funds—advertised as being easy as pie to cash in—are still locked up. And the brokerage firms that got investors into this mess are doing little to help." *Id.*

As described in the *Chandler* Complaint, auction rate securities are long-term variable-rate instruments. Their interest rates reset at periodic auctions, generally held every 7, 28 or 35 days. Auction rate securities include collateralized student loan debt obligations, preferred shares of closed-end mutual funds, and long-term municipal debt. Despite the complex, long-term nature of these instruments, broker-dealers marketed auction rate securities to investors as risk-free, cash-equivalent alternatives to money-market funds.

UBS was a substantial broker-dealer of auction rate securities. Through its financial advisors, UBS represented to investors in its uniform sales presentations and written materials that auction rate securities were the same as cash and were safe, highly liquid, short-term vehicles suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest.

UBS knew, but failed to disclose, material facts about the auction market and the auction rate securities it sold to investors including that: (1) auction rate securities were not cash alternatives, like money market funds, but were instead, complex, long-term financial instruments with 30-year maturity dates, or longer; (2) auction rate securities were only liquid at

---

[1] http://www.nytimes.com/2008/05/04/business/04gret.html?scp=2&sq=auction+rate&st=nyt.

the time of sale because UBS and other broker-dealers were artificially supporting and manipulating the auction market to maintain the appearance of liquidity and stability; (3) UBS and other broker-dealers routinely intervened in auctions for their own benefit, to set rates and prevent auctions from failing; and (4) UBS continued to market auction rate securities as liquid investments, even after it had determined that it and other broker-dealers were likely to withdraw their support for the periodic auctions which would result in a "freeze" of the auction rate securities market.  As a result of these material non-disclosures, the value of the auction rate securities UBS sold was not as represented.

On February 13, 2008, all of the major broker-dealers, including UBS, withdrew their support for the auction rate securities market, causing 87 percent of all auctions to fail.  The collapse of the auction rate securities market rendered more than $300 billion of outstanding securities illiquid.  An analyst for Citigroup, the largest underwriter of auction rate securities, recently predicted that the auction rate securities market will "cease to exist" entirely and that the collapse of the auction rate securities market could cause investors to "stop using the services of their brokerage and/or asset management firms as a result of a loss of trust."  Martin Z. Braun, "Auction-Rate Market Will 'Cease to Exist,' Citi Says (Update2)," *Bloomberg* (April 15, 2008).[2] Six weeks after UBS withdrew from the auction market, it reduced the value of the auction rate securities held by its clients.[3]

UBS was handsomely compensated for its participation in the auction rate securities market.  UBS received significant underwriting and broker-dealer fees from issuers of auction rate securities, as well as substantial commissions on the sales of auction rate securities from investors.

The auction rate securities debacle has caught the attention of federal, state and industry regulators.  Investigations are now being conducted by the U.S. Securities and Exchange

---

[2] http://www.bloomberg.com/apps/news?pid=20601213&refer=home&sid=aa6nZyh.SrNU.

[3] http://www.bloomberg.com/apps/news?pid=newsarchive&sid=aWN5lF5up11Q.

Commission, the Financial Industry Regulatory Authority, the State of New York, and a nine-state task force including Florida, Georgia, Illinois, Massachusetts, Missouri, New Hampshire, New Jersey, Texas and Washington.[4]  UBS also has received subpoenas from the Secretary of the Commonwealth of Massachusetts and the Attorney General of the State of New York.[5] Earlier this month, in the midst of these regulatory probes, UBS agreed to refund $35 million to 20 towns and public agencies in Massachusetts that bought auction-rate securities from UBS.[6]

Investors are also pursuing their rights.  This class action asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 on behalf of all persons and entities who purchased auction rate securities from UBS between March 21, 2003 and February 13, 2008 (the date of the collapse of the auction rate securities market), inclusive, and continued to hold such securities as of February 13, 2008.

## ARGUMENT

## I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact.  Fed. R. Civ. P. 42(a).  On May 15, 2008, the Court entered a Stipulation & Order Of Consolidation Of Related Actions (the "May 15 Order") which consolidated the *Chandler* and *Sanchez* actions, under the caption *In re UBS Auction Rate Securities Litigation*, 08-cv-02967. The Order further provides for the consolidation of any other action in this District that involves the same alleged claims against the defendants asserted in the *Chandler* and *Sanchez* actions.

On May 8, 2008, an additional class action, *Bonnist v. UBS AG, et al.*, 08-cv-04352, was filed in this District.  Like *Chandler* and *Sanchez*, *Bonnist* asserts class claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against UBS AG, UBS Securities LLC

---

[4] http://www.bloomberg.com/apps/news?pid=20601087&refer=home&sid=awpbOuGDDcs8.

[5] http://www.reuters.com/article/businessNews/idUSN2828540020080328; http://www.nytimes.com/2008/04/18/business/18rate.html?adxnnl=1&dlbk=&adxnnlx=1211257 058-hR3EkDb69s8wqegGQIoYfw.

[6] http://www.bloomberg.com/apps/news?pid=newsarchive&sid=at_dPP9NW7y8.

and UBS Financial Services Inc., arising out of the defendants' material misrepresentations and omissions about the auction rate securities UBS sold to investors between May 8, 2003 and February 13, 2008.[7]  The *UBS Auction Rate Securities Litigation* and *Bonnist* share common questions of law and fact including:  (1) whether defendants' conduct violated the federal securities laws; (2) whether defendants misrepresented or omitted material facts about the liquidity of auction rate securities and the auction market; and (3) the extent to which class members have sustained damages, and the proper measure of those damages.  Therefore, the actions should be consolidated pursuant to the May 15 Order.  *See* Fed. R. Civ. P. 42(a); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

## II.     THE CHANDLER GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Chandler Group includes five individuals and a married couple who collectively held $31,675,083 in auction rate securities they purchased from UBS during the Class period.[8]  The Chandler Group respectfully submits that it should be appointed Lead Plaintiff because it has complied with all of the PSLRA's requirements, has demonstrated the largest financial interest in this litigation, and otherwise meets the relevant requirements of Fed. R. Civ. P. 23.

---

[7] The existence of slight variations in the class periods alleged in the actions does not preclude consolidation.  *See, e.g., Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

[8] David and Shelly Chandler purchased and held their auction rate securities through the Chandler Trust Dated 12/28/2005, of which they are trustees.  Larry S. Watanabe purchased and held his auction rate securities through the Watanabe Family Trust Dated 5/8/03, of which he is a trustee.  David Ghiz purchased and held his auction rate securities through the Sally Lou Ghiz Trust and the George J. Ghiz Trust.  Mr. Ghiz is a trustee of both of those trusts.  The Chandlers, Mr. Watanabe and Mr. Ghiz bring their claims in their capacities as trustees of their respective trusts.

A.      **The Procedure Required By the PSLRA**

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). The plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the complaint, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The Chandler Group's counsel, on behalf of named plaintiffs and movants David and Shelly Chandler, filed the first action under the PSLRA relating to UBS's sale of auction rate securities, and caused notice to be published on *Business Wire* on March 21, 2008. *See* Declaration of Jonathan K. Levine In Support of the Motion of the Chandler Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Levine Dec."), Ex. A. Within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

The PSLRA also provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Albert Fadem Trust v. Citigroup, Inc.,* 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (Swain, J.).

**B.    The Chandler Group Satisfies The Lead Plaintiff Requirements Of The PSLRA**

**1.    The Chandler Group Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff**

As notice of the filing of the initial action was published on March 21, 2008, the time period in which class members may move to be appointed lead plaintiff in this case expires on May 20, 2008. *See* Levine Decl., Ex. A; 15 U.S.C. § 78u-4(a)(3)(A) and (B). This application, filed on May 20, 2008, is thus timely. Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Levine Decl., Ex. B-G (Movants' certifications). In addition, Movants have selected and retained competent counsel to represent themselves and the Class. *See id.*, Ex. H (firm resume of Girard Gibbs), Ex. I (firm resume of Stueve Siegel), Ex. J (firm resume of Seeger Weiss). Accordingly, the Chandler Group has satisfied the requirements of 15 U.S.C. § 78u-4(a)(3)(B), and the Court should approve its application for appointment as Lead Plaintiff and its selection of counsel to represent the Class.

**2.    The Chandler Group Has The Requisite Financial Interest In The Relief Sought By The Class**

Pursuant to the PSLRA, identification of the most adequate plaintiff "begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). "In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). "The PSLRA does not specify a method for calculating which plaintiff has the 'largest financial interest,' and neither the Supreme Court nor the Second Circuit has articulated such a method." *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008). To calculate each movant's financial interest in the litigation, the

Court should "select accounting methods that are both rational and consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. Generally, courts have considered the following factors in determining a movant's financial interest: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Fuwei Films,* 247 F.R.D. at 437 (citing *Lax v. First Merchs. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, *17 (N.D. Ill. 1997)).

The Chandler Group has a substantial financial interest in this case. In August and September 2007, the Chandlers purchased 44 shares of auction rate securities from UBS for approximately $25,000 each for a total of $1,100,083. *See* Levine Decl., Ex. B, Attachment A. In 2006 and 2007, Robert Bee purchased 279 shares of auction rate securities from UBS for $25,000 each for a total of $6,975,000. *See* Levine Decl., Ex. C, Attachment A. Throughout the Class Period, Edward Taras purchased auction rate securities with a par value of $6,400,000 from UBS. *See* Levine Decl., Ex. D, Attachment A. Between May 2006 and January 2008, Larry Watanabe purchased 113 shares of auction rate securities from UBS for $25,000 each for a total of $2,825,000. *See* Levine Decl., Ex. E, Attachment A. Beginning in 2005, David Ghiz purchased auction rate securities with a par value of $10,150,000 from UBS. UBS sold more than 85% of those securities to Mr. Ghiz within the last two weeks before the collapse of the auction rate securities market in February 2008. *See* Levine Decl., Ex. F. Attachment A. During the Class Period M. Richard Goldberg purchased and held auction rate securities with a par value of $4,225,000 from UBS.

UBS had not disclosed the risks associated with auction rate securities prior to selling them to Movants. At the close of the Class period on February 13, 2008, the Chandler Group held auction rate securities with a par value of $31,675,083. *See* Levine Decl., Ex. K (analysis of the Chandler Group's Class Period transactions). Upon the collapse of the auction market at the end of the Class Period, all of those securities were rendered illiquid, precluding Movants from selling their shares on the auction market. In May 2008, issuers Eaton Vance, DNP and Nuveen

redeemed $3,200,000 of auction rate securities that had been purchased by members of the Chandler Group. *See id.*

Because UBS sold auction rate securities as highly liquid cash equivalents, and these securities are now illiquid, a movant's financial interest can be measured conservatively by the amount of the movant's investment that remains illiquid—in other words, the par value of the auction rate securities that were purchased from UBS during the Class Period that have not been redeemed by the issuer. Under this formulation, the Chandler Group's cumulative financial interest for purposes of this motion, is $28,475,083—the combined par value of the shares of now-illiquid auction rate securities they purchased from UBS during the Class Period and held at the end of the Class Period that were not redeemed after the Class Period. Given the nature of the securities at issue, this is an objective and conservative method for calculating the financial interest of each movant seeking appointment as Lead Plaintiff under the PSLRA.

The Chandler Group knows of no other applicant with a greater financial interest seeking appointment as Lead Plaintiff in this matter. It thus satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3.     The Chandler Group Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy — concern the personal characteristics of the class representative. Consequently, a court deciding a lead plaintiff motion should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), as "the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *In re Fuwei Films,* 247 F.R.D. at 436 (quotations omitted); *see also Fadem Trust,* 239 F. Supp. 2d at 347 ("Typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."). Movants satisfy the typicality and adequacy requirements of Rule 23.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same course of events and are based on similar legal theories as the claims of the class members. *See, e.g., In re Fuwei Films,* 247 F.R.D. at 436. Typicality does not require that there be no factual differences between the class representative and the class members, because it is the generalized nature of the claims asserted that determines whether the class representative is typical. *See id.* ("The lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement.") (citations omitted).

Movants are typical because, like all other Class members, they: (1) purchased auction rate securities from UBS during the Class Period as a result of UBS's allegedly materially false and misleading statements and omissions concerning the liquidity and risk characteristics of the auction rate securities and the auction market; (2) held auction rate securities on the date that UBS and all other broker-dealers withdrew their support for the auction market; and (3) are consequently unable to sell their auction rate securities at par value. As the Chandler Group's claims and the claims of other Class members arise out of the same course of events, the Chandler Group satisfies the typicality requirement.

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its adequacy inquiry to the existence of any conflict between the proposed Lead Plaintiff's interests and the interests of

Class members.  A proposed lead plaintiff is adequate where:  (1) there is no conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel is qualified, experienced and generally able to conduct the proposed litigation.  *In re Fuwei Films,* 247 F.R.D. at 436 (citations omitted).  Additionally, the lead plaintiff should have a "sufficient interest in the outcome to ensure vigorous advocacy."  *Id.*

Movants are adequate representatives of the Class, as their interests are aligned with those of Class members, and there is no evidence of any antagonism between their interests. Like Class members, the Chandler Group acquired now-illiquid auction rate securities based on UBS's material non-disclosures and misleading statements about auction rate securities and the auction market.  Further, the Chandler Group has taken significant steps that demonstrate it will protect the interests of the Class:  it has retained competent and experienced counsel to prosecute these claims and to continue their investigation into the facts giving rise to this action.  The Chandler Group's proposed counsel are qualified, experienced and able to conduct this complex litigation in a professional manner.  The Chandler Group is not subject to any unique defenses or other legal hindrances.  Finally, the Chandler Group, which currently holds $28,475,083 worth of illiquid auction rate securities purchased from UBS during the Class period, has a sufficient interest in the outcome of this case to ensure vigorous advocacy.  For these reasons, the Chandler Group *prima facie* satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### 4.    Aggregation of the Chandler Group's Financial Interests Is Appropriate

The PSLRA on its face contemplates appointment of more than one class member as lead plaintiff, so long as the investor group will be capable of representing the interests of the class. The PSLRA provides that a court "shall appoint as lead plaintiff the member **or members** of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).  Under

the PSLRA, a "person or group of persons" may be an adequate lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

Courts in this district routinely permit aggregated investors to serve as Lead Plaintiff. *See, e.g., Reimer v. Ambac Fin. Group, Inc*., 2008 U.S. Dist. LEXIS 38729, *7-8 (S.D.N.Y. May 9, 2008) (Buchwald, J.) (explaining that disallowing unrelated class members to aggregate and serve as lead plaintiff is "now the minority view"); *In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, *8 (S.D.N.Y. May 5, 2008) (Schneidlin, J.) ("[W]here aggregation would not displace an institutional investor as presumptive lead plaintiff based on the amount of losses sustained, a small group of unrelated investors may serve as lead plaintiff, assuming they meet the other necessary requirements."); *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist LEXIS 91418, *2 (S.D.N.Y. Dec. 6, 2007) (Castel, J.) ("The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."); *In re American Bank Note Holographics Secs. Litig*., 93 F. Supp. 2d 424, 436 (S.D.N.Y. 2000) (McMahon, J.) ("The nomination of a group of investors as co-lead plaintiffs is specifically contemplated by the PSLRA."); *Weltz v. Lee,* 199 F.R.D. 129, 132 (S.D.N.Y. 2001) (Batts, J.) ("The majority of courts . . . have permitted the aggregation of claims for the purposes of becoming lead plaintiff."); *Vladimir v. Bioenvision*, 2007 U.S. Dist. LEXIS 93470, *40-42 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.).  Courts recognize, however, that appointment of an aggregate lead plaintiff may be "inappropriate where the group is too large." *Reimer,* 2008 U.S. Dist. LEXIS 38729, at *8 (citing *Weltz,* 1999 F.R.D. at 133).  The group must not be "so cumbersome as to deliver the control of the litigation into the hands of the lawyers." *Id.*

The Chandler Group is comprised of five individuals and a married couple who purchased auction rate securities from UBS and held them when the auction market collapsed. Movants have informed themselves about this litigation, and expect to participate directly in the lawsuit.  They have also stated their willingness to serve as Lead Plaintiff along with other qualified class representatives.  *See* Levine Decl., Ex. B at ¶ 3, Ex. C at ¶ 3, Ex. D at ¶ 3, Ex. E at

¶ 3, Ex. F at ¶ 3, Ex. G at ¶ 3.  As a group, they are neither too large nor too cumbersome to manage this litigation effectively.  Accordingly, aggregation of their claims is appropriate for purposes of the Lead Plaintiff appointment.

## III.    THE CHANDLER GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED

Due to the complexity of this litigation, the Chandler Group has selected three law firms to represent the class in this matter, subject to Court approval:  Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

As demonstrated by its firm resume, Girard Gibbs is experienced in litigating securities class and non-class actions and has successfully prosecuted numerous complex class cases on behalf of injured investors.  *See* Levine Decl., Ex. H.  Girard Gibbs has investigated the auction rate securities market since its collapse in February 2008 and filed the *Chandler* action, initial case against UBS under the PSLRA.  Girard Gibbs has been contacted by more than 2,000 auction rate securities investors, has interviewed Class members, and has retained consultants knowledgeable in auction rate securities.  Girard Gibbs is thus in a unique position to assess the claims, damages and needs of Class members, and is well-qualified to represent their interests. Girard Gibbs has access to numerous individuals, businesses and charities that would be willing to provide testimony or participate as non-lead plaintiffs if necessary to further the interests of the case.  This factor is critical here, as the case alleges widespread, systemic non-disclosures and misrepresentations.

Like Girard Gibbs, Stueve Siegel has taken a lead role in investigating and prosecuting cases related to auction rate securities, including the case pending against UBS.  Since the collapse of the auction market in February 2008, Stueve Siegel in partnership with other firms has taken the initiative in researching the auction rate securities industry, investigating potential claims, drafting the pertinent documents for the commencement of the litigation, and contacting investors who have requested advice from an attorney.  As evidenced by its firm resume, Stueve Siegel has extensive experience prosecuting and litigating class and complex litigation in courts

across the country, including securities matters.  *See* Levine Decl., Ex. I.  Given its experience with complex litigation and its familiarity with the auction rate securities market, Stueve Siegel is well-equipped to serve as Co-Lead Counsel in this litigation.

Over the past decade, Seeger Weiss has emerged as one of the leading plaintiffs' firms in the United States, as demonstrated by its inclusion in the National Law Journal's 2007 "Plaintiff's Hot List" of nationally elite firms.  With approximately 30 lawyers operating out of offices in four states, the firm's expertise in the areas of class action and mass tort litigation has been recognized by courts throughout the U.S.  As reflected in the firm biography, Seeger Weiss has been appointed to numerous positions of leadership in a variety of multidistrict and complex litigations including securities fraud class actions.  *See* Levine Decl., Ex. J.  Currently, Seeger Weiss serves on the Plaintiffs' Steering Committee in the *IPO Securities Litigation*, one of the largest and most significant coordinated securities fraud prosecutions in United States history. Seeger Weiss also holds or has held leadership roles in other securities matters, including: *PixelPlus Securities Litigation*,  *Sim, et al. v. Aspen Technology, et al.*,  *Babcock v. Citigroup*, *Victor v. UBS Paine Weber, et al.***,** and *ATEC Group, Inc. Class Action*.  Along with Girard Gibbs and Stueve Siegel, Seeger Weiss has been communicating with Class members and investigating the claims alleged in this case since the collapse of the auction market.

Accordingly, the Chandler Group's selection of Lead, Co-Lead and Liaison Counsel should be approved.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Chandler Group satisfies the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).  The Chandler Group respectfully requests that this Court:  (1) consolidate the related Actions; (2) appoint the Chandler Group as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and (3) approve its selection of Girard Gibbs as Lead Counsel, Stueve Siegel as Co-Lead Counsel, and Seeger Weiss as Liaison Counsel.

DATED: May 19, 2008                    Respectfully submitted,

                                       **GIRARD GIBBS LLP**

                                       By:   _Jonathan K. Levine_
                                            Jonathan K. Levine (JL-8390)

                                       Daniel C. Girard
                                       Aaron M. Sheanin
                                       601 California Street, 14th Floor
                                       San Francisco, CA  94108
                                       Telephone:  (415) 981-4500
                                       Facsimile:  (415) 981-4846

                                       **Proposed Lead Counsel**

                                       Norman E. Siegel
                                       **STUEVE SIEGEL HANSON LLP**
                                       460 Nichols Road, Suite 200
                                       Kansas City, MO, 64112
                                       Telephone: (816) 714-7100
                                       Facsimile: (816) 714-7101

                                       **Proposed Co-Lead Counsel**

                                       Christopher A. Seeger (CS-4880)
                                       Stephen A. Weiss (SW-3520)
                                       David R. Buchanan (DB-6368)
                                       **SEEGER WEISS LLP**
                                       One William Street, 10th Floor
                                       New York, NY  10004
                                       Telephone:  (212) 584-0757
                                       Facsimile:  (212) 584-0799

                                       **Proposed Liaison Counsel**

15

## CERTIFICATE OF SERVICE

I, Angeline C. Ellis, hereby certify that on May 20, 2008, I filed the following

document(s):

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CHANDLER
GROUP FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

By ECF (Electronic Case Filing): I e-filed the above-detailed document utilizing the United
States District Court, Southern District of New York's mandated ECF service on May 20, 2008.
Counsel of record are required by the Court to be registered e-filers, and as such are
automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, CA  May 20, 2008

_____/S/ Angeline C. Ellis_____