IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re UBS AUCTION RATE SECURITIES LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS<br><br><br>RANDOLPH BONNIST, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>UBS AG, UBS SECURITIES LLC, and UBS FINANCIAL SERVICES INC.,<br><br>        Defendants. | ) Master File No. 08-cv-02967-LMM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:08-cv-04352-LMM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**RESPONSE OF UBS ARS GROUP TO COMPETING MOTIONS FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**

Randolph Bonnist and Teachers Count ("UBS ARS Group" or "Movants") submits this response in further support of its own motion for appointment as lead plaintiff and appointment of its attorneys, Carey & Danis, LLC ("Carey & Danis"), as lead counsel, and in response to the competing motions for appointment of lead plaintiff and lead counsel filed by the Chandler Group, Aric A. Streit and Mary Streit, Trustees of the Streit Living Trust (the "Streit Group"), Steven Oppenheimer ("Oppenheimer") and the Sanchez Group.

I.  **BACKGROUND**

On May 20, 2008, five separate motions for consolidation[1] and appointment of lead plaintiff and lead counsel were filed with this Court.  The Movants each seek, respectively, appointment as lead plaintiff to pursue claims on behalf of all purchasers of auction rate securities ("ARS") sold by Defendants UBS AG, UBS Securities LLC and UBS Financial Services, Inc. (collectively, "Defendants" or "UBS").  Each movant claims it is the most adequate lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(i), because it: (i) has the largest financial interest in the outcome of the litigation; and (ii) otherwise satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure.

The UBS ARS Group should be appointed Lead Plaintiff, or part of the group of Lead Plaintiffs, because, although its overall loss may be lesser than some of the other movants, it is the only institutional investor -- specifically favored by Congress in passing the PSLRA -- seeking lead plaintiff status.  In addition, the motions of the other movants show that there are inadequacies – most obviously, their failure to include an institutional investor like Teachers Count – in their respective positions that would be remedied by inclusion of the UBS ARS Group and its chosen counsel in any Lead Plaintiff structure ordered by the Court.  Moreover, the UBS ARS Group satisfies the typicality and adequacy requirements of Rule 23 in that its claims are typical of the claims of other class members and its interests are aligned with those of the other class members.

---

[1] The Movants are in agreement that the cases should be consolidated.

## II. ARGUMENT

### A. UBS ARS Group Should be Appointed Lead Plaintiff, or Among the Lead Plaintiff Group, Because Teachers Count is the Lone Institutional Investor.

The PSLRA establishes a presumption for the most adequate plaintiff as the person or group who has (a) either filed a complaint or made a lead plaintiff motion, (b) in the determination of the court, has the largest financial interest in the relief sought by the class, and (c) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Importantly, however, courts have consistently given effect to Congress' intent to place the lead plaintiff function in the hands of institutional investors, and have held that such institutions are adequate and typical for purposes of PSLRA lead plaintiff determination. *See, e.g., In re Am. Serv. Group, Inc.*, 2006 U.S. Dist. LEXIS 61779, at *8-*10 (M.D. Tenn. Aug. 28, 2006 ("the PSLRA's legislative history reflects Congressional intent to favor institutional investors"); *In re Delphi Corp. Sec. Derivative & "ERISA" Litig.*, 458 F. Supp. 2d 455 (E.D. Mich. 2006) ("Congress explicitly stated that it hoped that by selecting the plaintiff with the greatest financial loss, the PSLRA would thereby 'increase the likelihood that institutional investors will serve as lead plaintiffs.'"), quoting H.R. Conf. Rep. No. 104-369 at 34, 1995 U.S.C.C.A.N. 730, 733.

Indeed, courts have acknowledged that the preference for institutional investors stems from Congress' desire to prevent the lawyer-driven litigation which may result from the artificial grouping of individual shareholders who, by themselves, have a minimal financial stake in the litigation:

> One of the principal legislative purposes of the PSLRA was to prevent lawyer-driven litigation. Appointing lead plaintiff on the basis of financial interest, rather than on a "first come, first serve" basis, was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers.

*Goldberger v. PXRE Group Ltd.*, No. 06-3410, 2007 U.S. Dist. LEXIS 23925, at *10 (S.D.N.Y. March 30, 2007), quoting *In re Veeco Instruments Inc. Sec. Litig.*, 233 F.R.D. 330, 337 (S.D.N.Y. 2005); *In re Unumprovident Corp. Sec. Litig.*, No. 03-49, 2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) ("another purpose of the PSLRA was to ensure control over securities class actions is vested in plaintiffs rather than in their attorneys"); *Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 307 (S.D. Ohio 2005) (noting that "Congress recognized that if lawyers could gather a group of unrelated plaintiffs and aggregate their financial losses, then lawyers would be encouraged to commence and direct the litigation, leaving the plaintiffs with little control"); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (refusing to appoint as lead plaintiff a group that, in the court's view, was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel'").

Institutional investors, like Teachers Count, are also favored as lead plaintiffs over groups of shareholders because "[a]t some point, a group becomes too large for its members to operate effectively as a single unit . . . . When that happens, the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve. . . ." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).

Teachers Count is a 501(c)(3) non-profit organization whose mission is to raise the status of the teaching profession and provide resources to the education community. *See* Supplemental

Declaration of Michael J. Flannery in Response to Lead Plaintiff Motions ("Flannery Supp. Decl.") at Ex. A. Using a public service announcement national ad campaign and related initiatives, Teachers Count is working to create a permanent culture of teacher appreciation in the United States. *Id.* Teachers Count understands its fiduciary duties and responsibilities, and regularly deals with fiduciary issues, standards and obligations. In short, Teachers Count is an institutional investor that is precisely the type of lead plaintiff Congress sought to attract to the PSLRA process: one that has sufficient savvy about the financial markets, as well as sufficient incentive, to be an active participant in the prosecution of the litigation. In this context, where Teachers Count has a strong stake in vindicating its position and ensuring that its critical funding not be undercut by Defendants false and misleading course of conduct, there is ample evidence that Teachers Count would make a significant contribution as Lead Plaintiff – or as part of any Lead Plaintiff Group – in voicing the concerns of institutional investors victimized by the ARS scheme perpetrated by the UBS Defendants.

Moreover, the UBS ARS Group (including Teachers Count) has made a *prima facie* showing of its ability to meet the typicality and adequacy requirements of Fed. R. Civ. P. 23. *See In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002). As indicated in its opening memorandum, UBS ARS Group's claims are typical of those of other members of the class and it will adequately represent the class through its capable counsel. Its claims against Defendants arise under the same nucleus of operative facts. Accordingly, the UBS ARS Group satisfies the adequacy and typicality requirements of Rule 23.

    B. **The Other Movants' Failure to Include an Institutional Investor, as well as Other Flaws, Would be Remedied by Appointment of the UBS ARS Group as Lead Plaintiff.**

 None of the other movants include an institutional investor which, as noted above, is a significant omission. Indeed, although several movants claim larger losses than the UBS ARS Group, "a movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class." *See In re Cable & Wirless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003). Moreover, at least two of the groups – the Chandler Group (7 individuals) and the Sanchez Group (14 individuals) – consist of large aggregations of unrelated individuals, which is strongly disfavored under the PSLRA and far exceeds the Securities and Exchange Commission's "three to five" rule for lead plaintiff groups. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 216-17 (D.D.C. 1999) ("'a group [must be] small enough to be capable of effectively managing the litigation and the lawyers . . . [and] should be no more than three to five persons'") (quoting memorandum submitted by SEC). Appointment of the UBS ARS Group, in conjunction with one or two other individuals, would remedy the problem of an unwieldy and unmanageable group attempting to conduct the litigation.

 Finally, there should be no concern about appointing plaintiffs from separate groups, as numerous courts have recognized that the appointment of co-lead plaintiffs is warranted, in situations where there were divergent or potentially conflicting interests, in order to ensure that the interests of all class members are properly protected. *See, e.g., In re Peregrine Systems, Inc. Sec. Litig.*, 2002 U.S. Dist. LEXIS 27690, at *47-50 (S.D. Cal., Oct. 9, 2002) (court appointed co-lead plaintiffs for claims under Securities Act and Securities Exchange Act, respectively, to facilitate

- 6 -

better representation of class members "varying and perhaps conflicting interests"); *Miller v. Ventro Corp.*, 2001 U.S. Dist. LEXIS 26067, *38 (N.D. Cal. 2001) (appointing co-lead plaintiffs to provide "the proposed class with the substantial benefits of joint decision-making and joint funding" and because co-appointment is consistent with the language and purpose of the PSLRA); *In re Cendant Corp. Litig.*, 182 F.R.D. 144, 149-50 (D.N.J. 1998) (appointing co-lead plaintiffs and co-lead counsel to address claim differences in securities class action); *In re Nanophase Tech. Corp. Litig.*, 1999 U.S. Dist. LEXIS 16171, *16 (N.D. Ill. Sept. 27, 1999) (appointing co-lead plaintiffs on section 10 and section 11 claims because legal standards and facts differed); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 402 (D. Minn. 1998) (appointing separate lead plaintiffs and counsel for options purchasers and securities purchasers).

### III. CONCLUSION

For the foregoing reasons, the UBS ARS Group should be appointed lead plaintiff or co-lead plaintiff, and its counsel, Carey & Danis, selected as lead counsel or co-lead counsel.

Dated:  May 30, 2008                    Respectfully submitted,


  /s/ Joseph P. Guglielmo
Joe R. Whatley, Jr.
Edith M. Kallas
Joseph P. Guglielmo
WHATLEY, DRAKE & KALLAS, LLC
1540 Broadway, 37th Floor
New York, NY 10036
Telephone:  (212) 447-7070
Facsimile:  (212) 447-7077

*Proposed Local Counsel*

Joseph P. Danis
Michael J. Flannery

Corey D. Sullivan
CAREY & DANIS, LLC
8235 Forsyth Blvd.
Suite 1100
St. Louis, MO  63105
Telephone:  (314) 725-7700
Facsimile: (314) 721-0905

*Proposed Lead Counsel*

Edward M. Gergosian
GERGOSIAN & GRALEWSKI LLP
655 West Broadway
Suite 1410
San Diego, CA  92101
Telephone:  (619) 237-9500
Facsimile:  (619) 237-9555

A. Hoyt Rowell, III
Daniel O. Myers
T. Christopher Tuck
RICHARDSON, PATRICK, WESTBROOK &
BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, SC  29464
Direct:  (843) 727-6500
Fax:  (843) 216-6509

*Attorneys for UBS ARS Group*

# CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2008, I electronically filed the **RESPONSE OF UBS ARS GROUP TO COMPETING MOTIONS FOR CONSOLIDATION, APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    /s/ Joseph P. Guglielmo
    Joseph P. Guglielmo

*Proposed Local Counsel*