UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re UBS AUCTION RATE SECURITIES LITIGATION ) ) ) ) This Document Relates To: ) All Actions ) ) ) ──────────────────────────────── ) ) RANDOLPH BONNIST, Individually and On ) Behalf of All Others Similarly Situated, ) ) Plaintiff, ) ) v. ) ) UBS AG, UBS SECURITIES LLC and UBS ) FINANCIAL SERVICES, INC. ) ) Defendant. ) ──────────────────────────────── ) | Master File No. 08-CV-02967-LMM<br><br><br><br>Case No. 08-CV-04352-LMM |

**REPLY IN SUPPORT OF THE CHANDLER GROUP'S MOTION FOR
CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND
APPROVAL OF SELECTION OF COUNSEL**

**Table of Contents**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I. THE CHANDLER GROUP'S FINANCIAL INTERESTS ARE PROPERLY
AGGREGATED................................................................................................................2

II. THE CHANDLER GROUP HAS THE LARGEST FINANCIAL INTEREST IN THE
RELIEF SOUGHT BY THE CLASS .................................................................................4

   A. The Chandler Group Has The Largest Financial Interest Of Any Movant.......................4

   B. The Streits' Attempts To Bolster Their Financial Interest Are Meritless.........................5

      1. The Streits' Inclusion of A Loan Is Unsupported By The Case Law .......................6

      2. The Streits' New Redemption Theory Does Not Elevate Their Financial Interest
Above The Chandler Group's................................................................................7

      3. The Streits' New Secondary Market Theory Is Too Speculative To Be A
Reasonable Gauge Of The Movants' Financial Interests .........................................8

      4. The Streits' New Average Daily Holdings Theory Is Speculative And Provides
No Rational Basis For The Court To Determine The Relative Financial Interests
Of The Movants......................................................................................................8

   C. No Other Movant Has Rebutted The Chandler Group's Typicality and Adequacy .........9

III. THE RELATED ACTIONS SHOULD BE CONSOLIDATED .........................................10

CONCLUSION ....................................................................................................................10

# Table of Authorities

**Cases**

*Barnet v. Elan*
   236 F.R.D. 158 (S.D.N.Y. 2005) ................................................................................3, 4

*Ezra Charitable Trust v. Rent-Way, Inc.*
   136 F. Supp. 2d 435 (W.D. Pa. 2001), .............................................................................6

*Funke v. Life Fin. Corp.*
   2003 U.S. Dist. LEXIS 1226 (S.D.N.Y. 2003) ................................................................3

*In re Bausch & Lomb Inc. Sec. Litig.*
   244 F.R.D. 169 (W.D.N.Y. 2007) ....................................................................................9

*In re Cavanaugh*
   306 F.3d 726 (9th Cir. 2002) ........................................................................................4, 8

*In re Centerline Holding Co. Sec. Litig.*
   2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. 2008) ...........................................................2, 6

*In re Crayfish Co. Sec. Litig.*
   2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002) ..............................................................3

*In re Ditech Comm. Corp. Secs. Litig.*
   2005 U.S. Dist. LEXIS 40963 (N.D. Cal. 2005) .............................................................4

*In re Doral Financial Corp. Sec. Litig.*
   414 F. Supp. 2d 398 (S.D.N.Y. 2006) ..............................................................................4

*In re eSpeed, Inc. Sec. Litig.*
   232 F.R.D 95 (S.D.N.Y. 2005) ...............................................................................2, 3, 4

*In re Fuwei Films Sec. Litig.*
   247 F.R.D. 432 (S.D.N.Y. 2008) .....................................................................................9

*In re Oxford Health Plans, Inc. Securities Litigation*
182 F.R.D. 42 (S.D.N.Y. 1998) ...............................................................................................4

*In re Unumprovident Corp. Sec. Litig.*
   2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. 2003), ..........................................................6

*Nager v. Websecure, Inc.*
   1997 U.S. Dist. LEXIS 19601 (D. Mass. 1997) ..............................................................3


*Reimer v. Ambac Fin. Group, Inc.*
   2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. 2008) .................................................................. 2

*Weltz v. Lee*
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................. 2, 3

*Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*
   231 F.3d 1215 (9th Cir. 2000) ................................................................................. 4

**Statutes**

Fed. R. Civ. P. 42(a)........................................................................... .....10

15 U.S.C. § 78u-(a)(3)(B)(i); (2) )...........................................................… …..10

## **INTRODUCTION**

The Chandler Group respectfully submits this reply in further support of its motion for appointment as Lead Plaintiff and approval of its selection of counsel. The Chandler Group has complied with the PSLRA's lead plaintiff procedures and has demonstrated the largest financial interest in the relief sought by the Class. The Chandler Group's claims are typical and the Group and its counsel will adequately represent the Class. The Chandler Group is thus presumed to be the "most adequate plaintiff." As no competing movant has rebutted the presumption in favor of the Chandler Group, the Court should appoint the Chandler Group to serve as lead plaintiff and approve its selection of counsel.

Aggregation of the Chandler Group's financial interests is proper. The Group has demonstrated a willingness and ability to collectively manage the litigation and oversee its counsel. The Group is committed to decision-making by consensus, and the size of the Group is manageable. Milberg LLP, counsel for movants Aric A. Streit and Mary Streit as Trustees for the benefit of the Streit Living Trust ("the Streits"), has repeatedly proposed that similarly sized or even larger groups be appointed lead plaintiff, and only opposes aggregation here because the total losses of the Chandler Group far exceed those of the Streits.

The Chandler Group has the largest financial interest in the relief sought by the Class. The Chandler Group is saddled with approximately $25.7 million in illiquid auction rate securities, as compared to only $16.8 million for the next closest movant, the Streits. Rather than acknowledge that they do not have the largest financial interest at stake, the Streits offer a series of calculations designed to increase the Streits' interest in the relief sought. The Streits argue their securities—the same as those held by the Chandler Group—are more illiquid or otherwise worth less than those of the Chandler Group, and should therefore count for more. The Streits also include in the calculation of their losses the value of a loan secured by their auction rate securities, and other "new math" stratagems. All of the Streits' arguments require the Court to abandon a simple comparison of how much each group spent to buy securities that cannot now

1

be sold and adopt instead the Streits' speculative valuation theories and dubious computations. The Court should reject the Streits' result-oriented approach and appoint the Chandler Group Lead Plaintiff.

## ARGUMENT

### I. THE CHANDLER GROUP'S FINANCIAL INTERESTS ARE PROPERLY AGGREGATED

Aggregation of the Chandler Group is appropriate. The "majority view" of the Southern District of New York is that "unrelated investors may aggregate under certain circumstances." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D 95, 99 (S.D.N.Y. 2005). An aggregated group of unrelated investors must (1) "evince[] an ability (and a desire) to work collectively to manage the litigation;" (2) "not be so cumbersome as to deliver the control of the litigation into the hands of the lawyers;" and (3) not displace an institutional investor with substantial losses. *Reimer v. Ambac Fin. Group, Inc.*, 2008 U.S. Dist. LEXIS 38729, *8-9 (S.D.N.Y. 2008) (quotations omitted). *See also In re eSpeed*, 232 F.R.D. at 100; *In re Centerline Holding Co. Sec. Litig.*, 2008 U.S. Dist. LEXIS 36406, *10 (S.D.N.Y. 2008) ("Groups of unrelated investors are acceptable if they otherwise meet the requirements of the PSLRA."); *Weltz v. Lee,* 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("[A]ppointing a group of people as co-lead plaintiffs is allowable under the PSLRA.").

The Chandler Group has evinced the ability and willingness to work collectively to manage this litigation. *See* Declaration of Aaron M. Sheanin In Support Of The Chandler Group's Motion For Consolidation Of Actions, Appointment As Lead Plaintiff, And Approval Of Selection Of Counsel, Ex. A (Chandler Declaration). The members of the Chandler Group have already participated in an initial telephone conference to discuss the prosecution of the case, and intend to communicate regularly. *Id.* at ¶¶ 4-5. The Group also plans to provide direction to counsel and oversee the litigation to ensure efficiency. *Id.* at ¶¶ 5-6. The Group will monitor the litigation and confer internally to the extent necessary to ensure that the Group's counsel is conducting the litigation responsibly and in the best interest of the Class. *Id.* at ¶ 6. As the

Chandler Group's members share litigation goals in common, the Group is committed to a decision-making process that involves "resolving significant strategic decisions on the basis of consensus." *Id.* at ¶ 5. The Chandler Group thus has the requisite cohesiveness and willingness to work collectively to serve as Lead Plaintiff, and will take an active role in the litigation.

That the Chandler Group consists of five individuals and one married couple does not counsel against aggregation in this case. Recognizing that there are "outer limits to the number of plaintiffs allowed to proceed as a lead plaintiff," the court in *Weltz* appointed a "group of seven unrelated" investors lead plaintiff because it did "not present a group so cumbersome as to deliver the control of the litigation into the hands of the lawyers." 199 F.R.D. at 133. Other courts have followed *Weltz*, ascertaining on a case-by-case basis whether the size and demeanor of the group threatened to permit counsel to control the case. *See, e.g., Funke v. Life Fin. Corp.*, 2003 U.S. Dist. LEXIS 1226,*16 (S.D.N.Y. 2003) (group of nine individual plaintiffs "not too large"); *In re Crayfish Co. Sec. Litig.*, 2002 U.S. Dist. LEXIS 10134 (S.D.N.Y. 2002) (appointing group of seven); *Nager v. Websecure, Inc.*, 1997 U.S. Dist. LEXIS 19601, *3 (D. Mass. 1997) (appointing group of nine); *Barnet v. Elan,* 236 F.R.D. 158, 163 (S.D.N.Y. 2005) ("six members is not too unwieldy a number to effectively manage the litigation"); *In re eSpeed,* 232 F.R.D at 99 (the "rule of reason" should be applied to group size, rather than a "hard-and-fast" upper limit). Thus, the Chandler Group is not excessively large.

The Chandler Group also will not displace an institutional investor with a substantial financial interest in the relief sought by the Class. As described in detail in the responses of the Chandler Group and Steven Oppenheimer in connection with this motion, the member of the ARS UBS Group known as Teachers Count has advanced no evidence demonstrating that it qualifies as the type of institutional investor Congress had in mind in enacting the PSLRA. *See* Chandler Response at 10 (Docket No. 42); *see also* Oppenheimer Oppo. at 1 (Docket No. 41). Teachers Count also has the smallest financial interest of any member of the Chandler Group or any other movant group, as it purchased only one share of auction rate securities for $25,000.

The Chandler Group should therefore be appointed Lead Plaintiff, as Teachers Count neither qualifies as an institutional investor nor has a substantial financial interest in the relief sought. *Compare In re eSpeed*, 232 F.R.D. at 99-100 (appointing group because "aggregation would not displace an institutional investor" with "substantial losses"), *with In re Doral Financial Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n.8 (S.D.N.Y. 2006) (appointing a "large institutional investor [that had] served as lead plaintiff in several securities class actions," as investor was "precisely the type of plaintiff envisioned under the PSLRA.").

The Milberg firm's aggregation arguments are surprising in light of the frequency with which Milberg has sought appointment of unrelated aggregated investors as lead plaintiff. In *In re Oxford Health Plans, Inc. Securities Litigation*, for example, Milberg sought lead plaintiff status for a group of no fewer than 35 individual plaintiffs and entities. 182 F.R.D. 42, 44-45 (S.D.N.Y. 1998); *see also Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1216 (9th Cir. 2000) (moving for appointment of a group of "34 previously unaffiliated persons"). Milberg proposed large, unwieldy groups following the enactment of the PSLRA, but in the more recent past has advocated for smaller groups comparable to the Chandler Group. *See, e.g., Barnet*, 236 F.R.D. at 161 (appointing Milberg's group of "six seemingly unrelated parties"); *In re Cavanaugh*, 306 F.3d 726, 728 (9th Cir. 2002) (appointing Milberg's group of five investors); *In re Ditech Comm.. Corp. Secs. Litig.*, 2005 U.S. Dist. LEXIS 40963, *2 (N.D. Cal. 2005) (appointing Milberg's group of five investors). It bears mention that Milberg sought appointment of a group of six "unrelated plaintiffs" in *In re Doral*, a case it cites in support of its argument against the Chandler Group's aggregation. 414 F. Supp. 2d at 400.

## II.  THE CHANDLER GROUP HAS THE LARGEST FINANCIAL INTEREST IN THE RELIEF SOUGHT BY THE CLASS

### A.  The Chandler Group Has The Largest Financial Interest Of Any Movant

A court determining which lead plaintiff movant has the "largest financial interest in the relief sought by the class" should "select accounting methods that are both rational and

consistently applied." *In re Cavanaugh*, 306 F.3d at 730 n.4. The most rational, objective method of calculating the respective financial interests in this case is the simplest: the combined par value of illiquid auction rate securities purchased from UBS during the Class Period that have not yet been redeemed. This method was used by all five of the initial movants in their opening briefs. *See* UBS ARS Group Memo. at 9 (Docket No. 15); Sanchez Group Memo. at 9 (Docket No. 19); Streit Memo. at 9 (Docket No. 22)[1]; Oppenheimer Memo. at 5 (Docket No. 26); and Chandler Group Memo. at 9 (Docket No. 28).

While the Chandler Group currently holds $25.7 million in illiquid auction rate securities purchased from UBS during the Class Period, competing movants the Streits, Steven Oppenheimer and the UBS ARS Group identify holdings of $16.8 million, $1.5 million and $1.1 million, respectively.[2] *See* Streit Oppo. at 3 (Docket No. 43); Oppenheimer Oppo. at 1; UBS ARS Group Memo. at 2 (Docket No. 15). The Chandler Group's current financial interest thus exceeds the Streits' by $8.8 million, Mr. Oppenheimer's by $24.1 million and the UBS ARS Group's by $24.6 million. Even if the Court accounts for announced (but unexpected) redemptions as advocated by the Streits, the Chandler Group's financial interest will stand at $24.7 million and will still exceed the Streits' by $7.9 million. The Chandler Group thus has the largest financial interest in the relief sought by the Class.

### B.   The Streits' Attempts To Bolster Their Financial Interest Are Meritless

In their moving papers, the Streits claim a financial interest based on (1) the amount of auction rate securities purchased from UBS during the Class Period and held at the close of the Class Period that remain illiquid; and (2) a loan the Streits obtained after the Class Period that is

---

[1] In their motion, the Streits claimed that a loan they took out after the Class Period should also be included as a part of their financial interest, but otherwise agreed that the relevant measure of financial interest is the combined par value of illiquid auction rate securities purchased from UBS that have not yet been redeemed. Streit Memo at 9-10 (Docket No. 22). As described in Section B(1) below, the Streits' $10 million loan cannot be included as a part of their financial interest for the purposes of these motions.

[2] There were initially five movants for Lead Plaintiff in this matter, but only four of the initial movants filed opposition papers. *See* Docket Nos. 14-16, 21-31, 39-44. The Chandler Group assumes that the Sanchez Group, which held only $5,900,000 in UBS auction rate securities and did not file opposition papers, has abandoned its motion. *See* Sanchez Memo. at 5 (Docket No. 19).

5

secured by auction rate securities the Streits purchased in part from UBS and in part from another broker. But once it became apparent that the Chandler Group was the presumptive Lead Plaintiff, the Streits devised several new valuation theories. None of the Streits' theories merits the Court's serious consideration. *In re Centerline*, 2008 U.S. Dist. LEXIS 36406 at *10 (court considering lead plaintiff application should reject any calculation "made in bad faith to ensure that [a movant] would have the largest loss").

### 1. The Streits' Inclusion of A Loan Is Unsupported By The Case Law

The Streits overstate their financial interest by including a $10 million collateralized loan incurred after the Class Period in their purported financial interest in the relief sought by the Class. Streit Oppo. at 4-5. As described in detail in the Chandler Group's response papers in support of this motion, the Streits' inclusion of the loan diverges from the relief sought by the Class, renders the Streits atypical, and suggests that the Streits are somehow entitled to count the same money twice. Chandler Response at 5-6.

The Streits' citations to *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, *31 (E.D. Tenn. 2003), and *Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 442-3 (W.D. Pa. 2001), do not support their loan argument. Those cases allowed investment managers to serve as lead plaintiffs, because they had sustained substantial losses on their securities purchases and they had an incentive to recover those losses in order to maintain their clients' good will. In neither case did the courts monetize that good will or value the investment managers' potential for lost future business as part of their "financial interest" under the PSLRA, however. Rather, the courts calculated the movants' financial interests solely upon the losses sustained in connection with their purchases of the securities at issue. Neither case stands for the proposition that a lead plaintiff movant can enhance the amount of its financial interest based on factors other than the securities purchased. As a result, the Streits' post-Class Period loan cannot be included in the calculation of their financial interest.

### 2. The Streits' New Redemption Theory Does Not Elevate Their Financial Interest Above The Chandler Group's

Although some of the Chandler Group's auction rate securities have been redeemed, the Chandler Group still holds the largest financial interest in the relief sought by the Class and will continue to do so even if all of the currently announced redemptions are completed. The Streits contend that their illiquid student loan auction rate securities are even more illiquid than those held by the Chandler Group. Streit Oppo. at 7. This argument ignores simple math. Taking into account all of the redemptions that have occurred to date, as well as those that have been announced but not yet completed, the Chandler Group still holds nearly $25 million in illiquid auction rate securities, exceeding the Streits' holdings by $7.9 million dollars. Streit Oppo. at 6. The Streits do not contest this conclusion. *Id.*

In an effort to close that gap, the Streits speculate about $5.1 million of possible future redemptions that may impact members of the Chandler Group. But neither of the press releases the Streits reference supports their argument. The DNP Select Income Fund press release states that DNP "is *hopeful* that it can start the redemption process in June," noting that "there are several hurdles that will have to be overcome" to implement the redemptions. The Cohen & Steers press release states that "Cohen & Steers intends to redeem additional AMPS provided that financing is obtained on acceptable terms."[3] The Streits cite no case supporting the theory that the Court should consider such speculative events in evaluating the largest stakeholder under the PSLRA. But even if the Court were to indulge the Streits' speculation and consider these potential redemptions, the Chandler Group would still hold $19.6 million of illiquid auction rate securities, exceeding the Streits' current holdings by $2.8 million.

///
///
///
///
///

---

[3] Declaration of Jerome M. Congress In Further Support of the Motion of Aric A. Streit and Mary Streit as Trustees For the Benefit of the Streit Living Trust for Lead Plaintiff Appointment, And In Opposition To Competing Lead Plaintiff Motions, Exs. F and G.

        3.      **The Streits' New Secondary Market Theory Is Too Speculative To Be A Reasonable Gauge Of The Movants' Financial Interests**

The Streits attempt to increase their financial interest by arguing that their securities are selling at a reduced value on the secondary market. This secondary market theory is too speculative and inconclusive to be used in calculating the movants' financial interests, however. The Streits concede that the secondary market is "insufficiently developed to provide an adequate basis for measuring the current value of ARS." Streit Oppo. at p. 8. The Streits also acknowledge that sales on the secondary market occur "only to the extent sales are possible." *Id.* The Streits fail to show how this theory impacts the relative financial interests of the competing movants, or how the Court could conduct this analysis in a rational and consistent manner using the objective data points as required under the PSLRA. *See In re Cavanaugh.* 306 F.3d at 730 n.4.

        4.      **The Streits' New Average Daily Holdings Theory Is Speculative And Provides No Rational Basis For The Court To Determine The Relative Financial Interests Of The Movants**

Pushing their speculative valuation theories further, the Streits next contend that interest rates on auction rate securities may have been lower than the market rates that would have prevailed, had the truth about auction rate securities been revealed. Streit Oppo. at 9. The Streits analyze each applicant's respective average daily holdings in auction rate securities, and conclude that they "*likely* sustained more harm from the failure to pay sufficient interest during the class period than any other movant, and that they therefore have the largest interest in that component of the class members claims." Streit Oppo. at 10 (emphasis added). The Streits do not explain how they came to this conclusion, what their theory is based on, what the impact would be on the lead plaintiff motions, or whether including these considerations as a part of the calculation of financial interest would materially affect the outcome of the motions.

Specifically, the Streits fail to explain how having larger average daily holdings in auction rate securities translates into a greater financial interest in the litigation. Their expert makes no effort to calculate the amount of interest that each movant should have earned. Nor

does their expert identify what component of each movant's financial interest should be attributed to the par value of its illiquid auction rate securities, and what component should be attributed to its average daily holdings. In the absence of such information, it comes as no surprise that the Streits also fail to explain how the Court is supposed to apply their theory in a rational and consistent manner free of anything short of wild speculation. *In re Cavanaugh*, 306 F.3d at 730 n.4. For these reasons, the Court should reject this theory as a component of loss valuation.

### C. No Other Movant Has Rebutted The Chandler Group's Typicality and Adequacy

The Chandler Group is typical and will adequately represent the Class. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). As explained in its previously filed briefs, the Chandler Group is typical in that its claims, like the claims of all other Class members, arise out of the purchase of auction rate securities from UBS during the Class Period as a result of UBS's materially false and misleading statements and omissions about the liquidity and risk characteristics of those securities and the auction market. The Chandler Group is also adequate to represent the interests of the Class. In enacting the PSLRA, Congress intended that parties "whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 172 (W.D.N.Y. 2007).

As the Class is comprised of holders of all types of auction rate securities, the fact that the Chandler Group holds each type of auction rate security—direct municipals, student loans, tax-exempt closed-end funds and taxable closed-end funds—renders the Chandler Group the movant with interests most "strongly aligned" with those of the Class.[4] There is no evidence of antagonism between the Chandler Group's interests and the interests of the Class. The Chandler Group's adequacy is further evinced by its selection of experienced counsel that is well-versed in

---

[4] *See* Declaration of Jonathan K. Levine in Support of the Motion of the Chandler Group for Consolidation of Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel, Ex. K.

the auction rate securities debacle and is competent to represent the Class and litigate its claims. The Chandler Group thus satisfies Rule 23. As no movant has submitted proof rebutting the fitness of the Chandler Group to represent the Class, the Court should appoint the Chandler Group Lead Plaintiff.

### III.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

As the *UBS Auction Rate Securities Litigation, Bonnist* and *Kassover* all involve common questions of law or fact, the Chandler Group supports consolidation of the *Bonnist* and *Kassover* actions. *See* Fed. R. Civ. P. 42(a).

### CONCLUSION

For the foregoing reasons and those stated in their previously filed papers, the Chandler Group respectfully requests that this Court: (1) appoint it as Lead Plaintiff pursuant to 15 U.S.C. § 78u-(a)(3)(B)(i); (2) approve its selection of counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); and (3) consolidate the *Bonnist* and *Kassover* actions with this action.

DATED:  June 19, 2008                                         Respectfully submitted,

**GIRARD GIBBS LLP**

By: *Jonathan K. Levine*
Jonathan K. Levine (JL-8390)

Daniel C. Girard (admitted *pro hac vice*)
Aaron M. Sheanin (admitted *pro hac vice*)
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

**Proposed Lead Counsel**

Norman E. Siegel (admitted *pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816)714-7100

Facsimile: (816)714-7101

**Proposed Co-Lead Counsel**

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street, 10th Floor
New York, NY 10004
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

**Proposed Liaison Counsel**

## CERTIFICATE OF SERVICE

I, Jonathan K. Levine, hereby certify that on June 19, 2008, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

1. **REPLY IN SUPPORT OF THE CHANDLER GROUP'S MOTION FOR CONSOLIDATION OF ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of June, 2008 at San Francisco, California.

_/S/ Jonathan K. Levine_