# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————————x
In re UBS AUCTION RATE SECURITIES   )
LITIGATION   )
   )   Master File No. 08-cv-02967 (LMM)
THIS DOCUMENT RELATES TO:   )
ALL ACTIONS   )
———————————————————————x
[*additional captions follow*]


## REPLY MEMORANDUM OF LAW OF THE STREITS
## AS TRUSTEES IN SUPPORT OF THEIR MOTION FOR CONSOLIDATION,
## APPOINTMENT OF LEAD PLAINTIFF, AND APPOINTMENT OF LEAD COUNSEL


**MILBERG LLP**
Jerome M. Congress
Kent A. Bronson
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:  (212) 594-5300
jcongress@milberg.com
kbronson@milberg.com

**LAW OFFICES OF GEORGE A. SHOHET,**
**A PROFESSIONAL CORPORATION**
George A. Shohet
245 Main Street, Suite 310
Venice, CA 90291
Telephone: (310) 452-3176
georgeshohet@gmail.com


**MILBERG LLP**
Jeff Westerman (JW-6500)
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071-3172
Telephone: (213) 617-1200
jwesterman@milberg.com


*Proposed Co-Lead Counsel for the Class*

—————————————————————————x
RANDOLPH BONNIST, Individually and On          )
Behalf Of Himself And All Others Similarly     )
Situated,                                      )
                                               )
                              Plaintiff,        )
                                               )
               vs.                             )    Case No. 08-cv-4352 (LMM)
                                               )
UBS AG, UBS SECURITIES LLC and UBS             )
FINANCIAL SERVICES, INC.,                      )
                                               )
                              Defendants.       )
                                               )
—————————————————————————x
RONALD D. KASSOVER, on behalf of himself       )
and all others similarly situated,             )
                                               )
                              Plaintiff,        )
                                               )
               vs.                             )    Case No. 08-cv-02753 (LMM)
                                               )
UBS AG and UBS FINANCIAL SERVICES,             )
INC.,                                          )
                                               )
                              Defendants.       )
                                               )
—————————————————————————x
ARIC A. STREIT and MARY STREIT as              )
Trustees for the benefit of the STREIT LIVING  )
TRUST, Individually And On Behalf of All Others )
Similarly Situated,                            )
                                               )
                              Plaintiffs,       )
                                               )
               v.                              )    Case No. 08-cv-5251 (LMM)
                                               )
UBS AG, UBS SECURITIES LLC and UBS             )
FINANCIAL SERVICES, INC.,                      )
                                               )
                              Defendants.       )
                                               )
—————————————————————————x

## TABLE OF CONTENTS

<strong>Page</strong>

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ....................................................................................................................4

    I.    THE STREITS HOLD THE LARGEST AMOUNT OF ARS, AND THE CHANDLER MOVANTS ARE A COLLECTION OF UNRELATED INDIVIDUALS WHO DO NOT QUALIFY AS A LEAD PLAINTIFF GROUP UNDER THE PSLRA.................................... 4

    II.   EVEN IF, ARGUENDO, THE CHANDLER INDIVIDUALS' HOLDINGS WERE AGGREGATED, THE STREITS WOULD STILL HAVE THE LARGEST FINANCIAL INTEREST.............................................................................................................. 5

    III.  NEITHER THE STREITS' UBS LOAN NOR THE TYPE OF ARS THEY PURCHASED RENDERS THEIR CLAIMS ATYPICAL ......................................................... 8

    IV.  THE STREITS HAVE THE MOST SOPHISTICATED UNDERSTANDING OF THIS LITIGATION AND GREATEST CONCERN FOR THE BEST INTERESTS OF CLASS MEMBERS ................................................................................................................ 12

    V.   CONSOLIDATION OF THE *KASSOVER* ACTION WITH THE EXCHANGE ACT CASES WILL FACILITATE JUDICIAL ECONOMY AND AVOID POSSIBLE PREJUDICE TO THE EXCHANGE ACT CLASS MEMBERS ........................................... 12

CONCLUSION.................................................................................................................15

## TABLE OF AUTHORITIES

### FEDERAL CASES

*A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567 (D.N.J. 2003) .........................................14

*Alexander v. Franklin Resources, Inc.*, 2007 U.S. Dist. LEXIS 19727 (N.D. Cal.
    Feb. 14, 2007) ..............................................................................................................14

*American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) ............13

*In re Bausch & Lomb Inc., Securities Litigation*, 244 F.R.D. 169 (W.D.N.Y.
    2007) ..............................................................................................................................10

*Borenstein v. The Finova Group, Inc.,* No. Civ. 00-0619, 2000 U.S. Dist. LEXIS
    14732 (D. Ariz. Aug. 30, 2000) .....................................................................................7

*In re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001) .............................................1

*In re Centerline Holding Company Securities Litigation*, No. 08 Civ. 0505, 2008
    U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008).......................................................10

*Ostano Commerzanstalt v. Telewide System*, 880 F.2d 642 (2d. Cir. 1989) ......................8

*Coleman v. B.G. Sulzle, Inc.*, 402 F. Supp. 2d 403 (N.D.N.Y. 2005)................................13

*In re Crazy Eddie Sec. Litigation*, 948 F. Supp. 1154 (E.D.N.Y. 1996) ............................8

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d. Cir. 2000)......................................................14

*In re Donnkenny Inc. Sec. Litigation*, 171 F.R.D. 156 (S.D.N.Y. 1997).............................1

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992) .........................9

*In re E.Spire Commc'ns, Inc. Sec. Litigation*, 231 F.R.D. 207 (D. Md. 2000) ...................1

*Ezra Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435 (W.D. Pa. 2001)...............7

*Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898
    (S.D.N.Y. July 20, 2004) ..............................................................................................14

*In re Fuwei Films Securities Litigation*, 247 F.R.D. 432 (S.D.N.Y. 2008).........................9

*Grubb v. Federal Deposit Insurance Corp.*, 868 F.2d 1151 (10th Cir. 1989)....................8

*In re Host American Corporation Securities Litigation*, 236 F.R.D. 102 (D. Conn. 2006) ..................................................................................................................5

*In re Initial Public Offering Sec. Litigation*, 214 F.R.D. 117 (S.D.N.Y. 2002) .................9

*Johnson v. Ashcroft*, 378 F.3d 164 (2d Cir. 2004)............................................................13

*In re Lernout & Hauspie Sec. Litigation*, 138 F. Supp. 2d 39 (D. Mass. 2001).................1

*Linn v. Allied Irish. Banks, PLC*, No. 02 Civ. 1738 (DAB), 2004 U.S. Dist. LEXIS 24655 (S.D.N.Y. Dec. 8, 2004) .........................................................9

*In re Milestone Scientific Sec. Litigation*, 183 F.R.D. 404 (D.N.J. 1998) ..........................1

*In re Pfizer Inc. Sec. Litigation*, 233 F.R.D. 334 (S.D.N.Y. 2005)....................................1

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y.2004) .........................................................11

   (quoting *In re Prudential Sec. Inc. Ltd. P'ship Litig.,* 163 F.R.D. 200 (S.D.N.Y. 1995))................................................................................................9

*Power Travel International, Inc. v. America Airlines, Inc.*, 2004 U.S. Dist. LEXIS 21802 (S.D.N.Y. Oct. 29, 2004) ...............................................................13

*In re Razorfish, Inc. Sec. Litigation*, 143 F. Supp. 2d 304 (S.D.N.Y. 2001) ......................1

*In re Ribozyme Pharms, Inc. Sec. Litigation*, 192 F.R.D. 656 (D. Colo. 2000) .................7

*Schriver v. Impac Mortgage Holdings, Inc.,* No. SACV 06-0031, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. May 1, 2006) ......................................................14

*Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) .......................14

*In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972 (PKC), 2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) .........................................................5

*Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979) .............................13

*In re Unumprovident Corp. Sec. Litigation*, No. 03-CV-0049, 2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) .....................................................7

*Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000) ....................................13

*In re WorldCom, Inc. Securities Litigation*, No. 02 Civ. 3288, 2002 U.S. Dist. LEXIS 27638 (S.D.N.Y. 2002)................................................................14

*Zeller v. Bogue Electric Manufacturing Corp.*, 476 F.2d 795 (2d Cir. 1973), *cert. denied*, 44 U.S. 908 (1973) ..........................................................................8

*Academic Industrial v. Untermeyer Mace Partners.*, No. 90 Civ. 1052, 1992 WL 73473 (S.D.N.Y. Apr. 1, 1992)................................................................8

*Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM), 2007 WL. 2197836 (S.D.N.Y. July 31, 2007)...................................................................................1

*Goldberger v. PXRE Group Ltd.*, No. 06-CV-3410 (KMK), 2007 WL 980417 (S.D.N.Y. Mar. 30, 2007) ....................................................................1

*Ruland v. InfoSonics Corp.*, No. 06-CV-1231, 2006 WL 3746716 (S.D. Cal. Nov. 7, 2006) ...........................................................................................1

*Ruland v. InfoSonics Corp.*, No. 06-cv-1231, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) .......................................................................................7

*In re Superior Offshore Intern., Inc. Sec. Litigation*, No. H-08-0687, 2008 WL 2148745 (S.D. Tex. May 20, 2008) .................................................1

*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273 (D. Ariz. Apr. 7, 2008)....................................................................................1

## DOCKETED CASES

*Streit v. UBS AG*, No. 08-cv-5251 (LMM) (S.D.N.Y. filed June 9, 2008)........................3

## FEDERAL STATUTES

Fed. R. Civ. P. 42 (a) ..........................................................................................12

H.R. Rep. No. 101-524, 302, *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ..........................7

Investment Advisers Act of 1940, 15 U.S.C. § 80b-1, *et seq* ..............................9

## MISCELLANEOUS

Elliot J. Weiss, *The Lead Plaintiff Provisions of the PSLRA After a Decade, OR "Look What's Happened To My Baby,"* 61 V and L. Rev. 543 ......................................4

## PRELIMINARY STATEMENT

The Streits' $16.85 million in frozen auction rate securities ("ARS") continues to dwarf the amount of ARS held by any of the individuals who have sought appointment as a lead plaintiff. The seven smaller investors who are moving collectively under "Chandler" contend their individual holdings should be aggregated. However, despite two opportunities, they still have not filed an affidavit showing that they are a genuine lead plaintiff group under the PSLRA, *i.e.*, a cohesive organization capable of effective decision-making. Instead, they are apparently an amalgam of investors with smaller holdings than the Streits, cobbled together by their lawyers – a factor almost universally recognized as contrary to the intent of the PSLRA. This Court should align itself with the many decisions in this District and elsewhere that refuse to endorse such a transparent circumvention of the statute.[1]

Equally troubling, the amount of the Chandler individuals' interest is uncertain. Their ARS holdings are rapidly diminishing in a cascade of issuer redemption announcements. Moreover, regulatory developments in the past few days intended to provide liquidity for ARS preferred securities issued by closed end mutual funds may soon eliminate the lion's share of their holdings.

---

[1] *See, e.g., In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (Owen, J.); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) (Rakoff, J.); *In re Tarragon Corp. Sec. Litig.*, No. 07 Civ 7972 (PKC), 2007 WL 4302732, at *1 (S.D.N.Y. Dec. 6, 2007) (Castel, J.); *Bhojwani v. Pistolis*, No. 06 Civ. 13761 (CM), 2007 WL 2197836, at *4 (S.D.N.Y. July 31, 2007) (McMahon, J.); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (Cedarbaum, J); *Goldberger v. PXRE Group Ltd.*, No. 06-CV-3410 (KMK), 2007 WL 980417, at *5 (S.D.N.Y. Mar. 30, 2007) (Karas, J.); *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001); *In re Superior Offshore Intern., Inc. Sec. Litig.*, No. H-08-0687, 2008 WL 2148745, *1 (S.D. Tex. May 20, 2008); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008); *Ruland v. InfoSonics Corp.*, No. 06-CV-1231, 2006 WL 3746716, *3 (S.D. Cal. Nov. 7, 2006); *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 44 (D. Mass. 2001); *In re E.Spire Commc'ns, Inc. Sec. Litig.*, 231 F.R.D. 207, 213 (D. Md. 2000); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 417 (D.N.J. 1998).

Even if, *arguendo*, the Chandler movants could permissibly aggregate their current holdings, their financial interest would still be less than the Streits'. To avoid this result, they contend that the Streits' ARS related $10.1 million debt obligation to UBS should be ignored in assessing the Streits' financial interest. However, applicable case law and the legislative history of the PSLRA confirm that the concept of a plaintiff's "financial interest" includes the full amount the plaintiff has "at stake" in the litigation.

What is at stake here for the Streits and other class members forced to participate in the UBS loan program is *both* their debt obligation to UBS and the amount they paid for their ARS. The Streits accepted the UBS loan only because their ARS holdings are illiquid and they need the funds for their real estate business. UBS solicited class members specifically because it knew they were counting on liquidity. The loans are secured not only by class members' frozen ARS holdings, but also by their other personal assets, increasing what they have at risk. The loans allow UBS to profit off the hardship it created for class members, perpetuating its wrongful course of conduct. In light of these facts, the $10.1 million debt obligation provides the Streits with an important financial stake in the outcome of this litigation in addition to the $16,850,000 of ARS sold to them by UBS.

The Chandler individuals err in arguing that the debt obligation renders the Streits atypical. If anything, the Streits are *more* typical of the class members than the Chandler movants or any other movants. The Streits' securities fraud claim is based on the very same common course of wrongful conduct by UBS that deceived all the class members into purchasing their ARS. But unlike the other movants, who apparently did not obtain the UBS loans, the Streits are also typical of the class members who were compelled to do so. It is fair

and proper to include this claim as an additional source of recovery for the class as the Streits have done in their complaint.[2]

The superiority of the Streits' lead plaintiff application is further confirmed by the other movants' failure to address issues that are important in attempting to achieve full relief for the class. For example, the Chandler movants' two presentations to date ignore the importance of lost interest as one component of the relief. In contrast, the Streits retained an expert to assist them and the class in this area and submitted that analysis to the Court for consideration.

Finally, only the Streits seek to avoid potential prejudice to the class members by moving for consolidation of the *Kassover* action and for appointment of the same lead counsel in both the cases asserting claims under the Securities Exchange Act ("Exchange Act cases") and *Kassover*, which is an Investment Advisers Act ("IAA") case. The putative class in *Kassover* includes most of the persons who will be members of the class in the Exchange Act cases. If the *Kassover* action proceeds ahead of the Exchange Act cases, there is a risk that the *Kassover* plaintiffs will litigate and the Court will decide issues that profoundly affect the Exchange Act cases before the Court appointed lead plaintiff and lead counsel in the Exchange Act cases have addressed those issues with the Court. As discussed below, there is even a risk that if *Kassover* is resolved first, defendants might argue that the class members in the Exchange Act cases are barred from going forward on the Exchange Act claims because of issues concerning claim splitting or other aspects of claim preclusion. The Court can easily avoid such risks by granting the Streits' motion to consolidate *Kassover* for all purposes with the Exchange Act cases now.

---

[2] See, *e.g.*, Complaint in *Streit v. UBS AG,* No. 08-cv-5251 (LMM), (filed June 9, 2008), at ¶¶ 10, 52, 88 and Prayer for Relief. As discussed below, consequential damages may properly be recovered under the federal securities laws.

# ARGUMENT

I.    **THE STREITS HOLD THE LARGEST AMOUNT OF ARS, AND THE CHANDLER MOVANTS ARE A COLLECTION OF UNRELATED INDIVIDUALS WHO DO NOT QUALIFY AS A LEAD PLAINTIFF GROUP UNDER THE PSLRA**

The Chandler individuals concede that the Streits' $16.85 million in ARS is far in excess of the financial interest of any individual movant, but contend that the Court should allow them to aggregate their interests. However, the seven Chandler individuals have failed to submit affidavits or create any record showing that they existed as a group previously or are now acting as a cohesive group that can oversee their counsel and direct this litigation.[3] They have not even submitted any evidence that they have ever spoken with one another, let alone coordinated strategy for this case. Therefore, under the case law, they have not "proven" their own existence:[4]

> Here, neither the "Tarragon Group" nor the "Judelson Group" has *proven* its own existence. Other than that each of the two groups is represented by a set of lawyers, no information is provided. There is no *evidence* that the members of these groups have ever communicated with other members of their respective group or will do so in the future. While one might assume that each group member shares a common purpose or goal in obtaining a recovery in the lawsuit, the same may be said of any class member who does not opt out of the class. *There has been no showing that the members of either "group" have, in fact, functioned as a group.* Neither "group" is therefore in a position to direct and control counsel.

---

[3] In light of the case law recognition that filing an affidavit showing the existence of the group is an important step in creating a record that a proper group exists, one would have expected the Chandler individuals to file such an affidavit in support of their initial motion or in connection with their opposition. Should they belatedly file such an affidavit with their reply memorandum, the Streits request leave to submit a brief memorandum commenting on the adequacy of that affidavit.

[4] *See*, Elliot J. Weiss, *The Lead Plaintiff Provisions of the PSLRA After a Decade, OR "Look What's Happened To My Baby,"* 61 Vand. L. Rev. 543, 560 (2008) (the co-author of the PSLRA endorses the growing reluctance of courts to permit a putative "group" of unrelated investors to serve as lead plaintiffs where they have been cobbled together through Internet advertisements for that purpose).

*In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972 (PKC), 2007 U.S. Dist. LEXIS 91418, *3-4 (S.D.N.Y. Dec. 6, 2007) (emphasis added).

The Chandler movants cite *In re Host American Corporation Securities Litigation*, 236 F.R.D. 102 (D. Conn. 2006) for the proposition that the majority of courts have taken an "intermediate position, allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case, but selecting only a few lead plaintiffs from within a larger group." Chandler Opp. at 9 (quoting *In re Host*, 236 F.R.D. at 106). However, the Chandler individuals have not demonstrated why it would be more beneficial under the circumstances of this case to appoint their unrelated "group" of individuals or some subset of that group, as opposed to the Streits, who present no issues about aggregation and individually hold the largest face amount of ARS.[5]

## II.    EVEN IF, ARGUENDO, THE CHANDLER INDIVIDUALS' HOLDINGS WERE AGGREGATED, THE STREITS WOULD STILL HAVE THE LARGEST FINANCIAL INTEREST

The Streits' total financial interest in this litigation continues to exceed $26,850,000. In contrast, the financial interests of the Chandler movants are below that figure and continue to shrink. The Streits demonstrated in their last submission that the Chandler individuals' ARS holdings would decline to $24,731,583 by the end of July, 2008.[6] More recent announcements confirm the strong likelihood that the Chandler individuals' holdings of unredeemed ARS will fall well below that amount. On June 10, 2008, DWS Scudder announced progress in the

---

[5] *In re Host* specifically noted that the SEC "takes the position that a group of no more than three to five investors should be appointed as lead plaintiffs, to ensure that the plaintiffs are able to maintain control of the litigation" (236 F.R.D. at 106 n.5) and the court appointed a group that was comprised of only one institutional investor and two individuals. *Id*. at 105.

[6] The Chandler opposition did not reflect recently announced redemptions and instead represented that current holdings of ARS were $25,675,000. *Compare* Chandler Opp. at 1 and Exhibit L to Congress Decl., filed June 9, 2008.

refinancing of the ARS issued by two of its funds which will allow for the full redemption of those ARS. This redemption will further reduce the Chandler individuals' holdings by eliminating $500,000 in Scudder ARS held by Robert Bee. *See* Exhibit A to the Declaration of Jerome M. Congress filed herewith ("Congress Reply Decl.")

Most recently, a major new announcement has raised the prospect that further substantial redemptions of the Chandler individuals' closed end mutual fund preferred share ARS may occur. According to a June 17, 2008 Wall Street Journal article, recent decisions by the Internal Revenue Service and the Securities and Exchange Commission could generate additional redemptions of closed end mutual fund preferred share ARS by facilitating the creation of "new securities [that] could be bought by money funds and used to rescue stranded holders of auction-rate preferred shares." Daisy Maxey, "*Help Nears For Auction-Rate Holders,*" Wall Street Journal, June 17, 2008, at C15. *See* Exhibit B to Congress Reply Decl. The significance of such a program for the Chandler movants is apparent, because they currently hold $18,481,582 face amount of mutual fund preferred share ARS, after accounting for past and imminent redemptions.

The fact that the Chandler individuals' holdings are continuously decreasing means that it is impossible to predict what the face amount of their ARS will be, either individually or in the aggregate, six months or a year from now. It is therefore unclear how much financial incentive they will have to vigorously litigate these claims throughout the full course of the litigation. In contrast, none of the Streits' ARS have been redeemed, and no redemption of their ARS has been announced.

The Chandler individuals contend that the Streits may not properly include in their financial interest the $10.1 million loan the Streits were forced to incur by virtue of defendants'

fraud. However, that argument by the Chandler movants misconstrues the term "financial interest" as used in the PSLRA. The legislative history of the PSLRA makes clear that the purpose of the "financial interest" provision was to insure that the plaintiff having the most significant financial stake in the litigation would be put in charge of the case. *See*, *e.g.*, H.R. Rep. No. 101-524, 302, *reprinted in* 1995 U.S.C.C.A.N. 730, 733:

> Institutional investors and *other class members with large amounts at stake* will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

The courts have recognized that the amount "at stake" for a given plaintiff is not be limited to the amount of loss or damages.[7] Rather it may include other considerations that are relevant to the strength of the plaintiff's incentive to obtain the best possible result for the class.[8]

The Streits' $10.1 million loan represents both an important stake in the outcome of the litigation as well as a powerful financial incentive to vigorously litigate these claims against UBS.[9] The UBS loan can be called in at any time by UBS (see, *e.g.*, the experience of one class member set forth in Congress Reply Decl., Exh. D), the collateral used to secure that loan is

---

[7] Financial interest is not synonymous with legal damages. *Ruland v. InfoSonics Corp.*, No. 06-cv-1231, 2006 WL 3746716, at *6 (S.D. Cal. Oct. 23, 2006) ("Of course, what damages may be ultimately recovered by the various plaintiffs is a different issue" than financial interest); *In re Ribozyme Pharms, Inc. Sec. Litig.*, 192 F.R.D. 656, 661 (D. Colo. 2000) ("I agree that the determination of financial interest does not equate to damages. Damages is a term of art and a technical matter to be established by experts. The lead plaintiff provision in the PSLRA does not use the term 'damages' but instead, 'largest financial interest'")

[8] See, *e.g.*, *Ezra Charitable Trust v. Rent-Way, Inc*., 136 F. Supp. 2d 435, 443 (W.D. Pa. 2001) (finding an investment adviser to have a significant financial interest "in attempting to recover the $ 10.1 million allegedly lost by its clients in order to maintain their goodwill and future business"); *In re Unumprovident Corp. Sec. Litig*., No. 03-CV-0049, 2003 U.S. Dist. LEXIS 24633, at *31 (E.D. Tenn. Nov. 6, 2003) (same); *Borenstein v. The Finova Group, Inc.*, No. Civ. 00-0619, 2000 U.S. Dist. LEXIS 14732, at *21 (D. Ariz. Aug. 30, 2000)("[c]ommon sense dictates" that the personal significance of the amount at issue, as opposed to merely focusing on the dollar amount of loss, "should be considered in determining a potential plaintiff's 'financial interest.'")

[9] The Chandler individuals suggest that because the Streits' loan was taken out after the end of the Class Period, the loan is not relevant to their financial interest. However, the crucial consideration is whether the loan obligation provided the Streits with an additional strong incentive to litigate the case successfully. The fact that the debt was incurred subsequent to the class period in no way derogates from the additional financial incentive it creates, and is fully consistent with considering loss resulting from the debt obligation to be consequential damages caused by defendants' fraud.

illiquid as a result of the alleged fraud, and the loan proceeds are needed for use in the Streits' real estate business. Therefore, the Streits have a financial interest in this litigation of over $26 million.[10]

Economic loss flowing from loans class members obtained from UBS after their ARS holdings were frozen is a proper source of recovery in this case, even if such losses are regarded as consequential damages. In Rule 10b-5 cases, both general and consequential damages caused by defendants' wrongful conduct may be recovered.[11]

## III.    NEITHER THE STREITS' UBS LOAN NOR THE TYPE OF ARS THEY PURCHASED RENDERS THEIR CLAIMS ATYPICAL

The Streits UBS loan does not detract from their typicality because their claims are based on the same common course of wrongdoing that is alleged to have injured all class members. Plaintiffs allege that they and all other class members were deceived by UBS' manipulation of the ARS auction market and its materially misleading omissions and representations related to the nature of the securities, including, *inter alia*, that ARS were cash equivalents. Because the Streits' claims emanate from the same course of alleged wrongdoing that injured all of the class members, their claims are typical.

---

[10] The Chandler individuals suggest that including the full $10.1 million loan in the Streits' financial interest is inappropriate because the loan is partially secured by $3.45 million in ARS the Streits hold in their UBS account that were originally purchased through a different bank. To the contrary, the entire loan amount is relevant to assessing the Streits' financial interest in the litigation. Regardless of the nature or source of the collateral for that loan, defendants' fraud has given the Streits an additional $10 million incentive to do well in this case in order to avoid having to repay the loan from their non-ARS assets. Moreover, even if the Court were to deduct from the Streits' financial interest the proportion of the loan that is backed by these $3.45 million in ARS (the non-UBS ARS constitute 17% of the face value of the ARS securing the loan), the Streits would still have a financial interest in the amount of $25,233,100, which also qualifies as the largest financial interest in this litigation.

[11] See, *E.g., Grubb v. Fed. Deposit Ins. Corp.*, 868 F.2d 1151, 1165-67 (10th Cir. 1989); *Zeller v. Bogue Elec. Mfg. Corp.*, 476 F.2d 795, 803 (2d Cir. 1973), *cert. denied*, 44 U.S. 908 (1973); *In re Crazy Eddie Sec. Litig.*, 948 F. Supp. 1154, 1165-66 (E.D.N.Y. 1996); *Academic Indus. v. Untermeyer Mace Partners.*, Docket. No. 90 Civ. 1052, 1992 WL 73473, at *2 (S.D.N.Y. Apr. 1, 1992). *Cf. Ostano Commerzanstalt v. Telewide Sys.*, 880 F.2d 642, 649 (2d. Cir. 1989) (discussing types of consequential damages that may be awarded in fraud cases).

The Chandler individuals cite to *In re Fuwei Films Securities Litigation*, 247 F.R.D. 432

(S.D.N.Y. 2008) (Sullivan, J.), a case that actually confirms that the foregoing typicality analysis

is correct:

> Typicality is satisfied if "each class member's claim arises from the same
> course of events, and each class member makes similar legal arguments to
> prove the defendant's liability." *In re Drexel Burnham Lambert Group,
> Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted). The lead
> plaintiff's claims "need not be identical to the claims of the class to satisfy
> the typicality requirement." *Pirelli*, 229 F.R.D. at 412. Indeed, "*[t]he
> possibility of factual distinctions between the claims of the named
> plaintiffs and those of other class members does not destroy typicality, as
> similarity of legal theory may control even in the face of differences of
> fact.*" *Id.* at 412 (quoting *In re Prudential Sec. Inc. Ltd. P'ship Litig., 163
> F.R.D. 200 (S.D.N.Y. 1995)).

*In re Fuwei*, 247 F.R.D. at 436 (emphasis added). While there may be some factual distinctions

between the Streits and members of the Class who have not taken out these loans, that does not

mean that they have different claims or that proof of their claims will differ materially.[12]

If anything, the loan makes the Streits' claims more typical than those of other movants

who have not taken out loans.  As shown in Exhibit C to the Congress Reply Decl., because UBS

actively solicits class members to take out ARS-related loans, it is likely that numerous class

members have done so.[13]  *See, e.g.,* "Holders of Auction-Rate Debt Have Choices", Congress

Reply Decl., Exh. D.

---

[12] *See also Linn v. Allied Irish. Banks, PLC*, No. 02 Civ. 1738 (DAB), 2004 U.S. Dist. LEXIS 24655, *14 (S.D.N.Y. Dec. 8, 2004) (Batts, J.) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)) (the typicality requirement "does not require that the factual background of [the lead plaintiff's] claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to the [lead plaintiff's] claim as to that of other members of the proposed class"); *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) ("[t]ypicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise").

[13] The Streits allege that UBS is improperly benefiting from its fraud by requiring class members to borrow their own money back after deceiving them into purchasing ARS.  *Id.* The Streits' complaint properly seeks legal and equitable relief for this misconduct.  *See*, Streit Complaint at ¶¶ 10, 52, 88 and Prayer for Relief.  Similarly, and in contrast to the other lead plaintiff movants, the Streits allege violations of the Investment Advisers Act of 1940, 15

In spite of these class-wide circumstances, the Chandler individuals falsely accuse the Streits of using their ARS-related debt as a "strategic" ploy to show that they have the largest financial interest.  *In re Centerline Holding Company Securities Litigation*, 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008).  To the contrary, the Streits incurred this debt not for any strategic litigation purpose but because they need liquidity to operate their real estate business. Streit Aff. at ¶ 5.  They entered into their ARS-related margin loans on February 26, and 28, 2008, approximately two weeks after the end of the class period and nearly a month before the first UBS action was filed with the Court. *Id.*

By contrast, in *Centerline*, the court found that one lead plaintiff movant improperly pled a longer class period to ensure that it had the largest loss.  No. 08 Civ. 0505, 2008 U.S. Dist. LEXIS 36406, at *12-13.  The Streit's affidavit confirms that nothing of that sort happened here.[14]

The Chandler individuals also complain that the inclusion of the loan runs afoul of the "traditional factors considered in connection with the selection of a Lead Plaintiff," citing *In re Bausch & Lomb Inc., Securities Litigation*, 244 F.R.D. 169 (W.D.N.Y. 2007). Chandler Opp. at 6.[15]  As shown above, the law is clear that the assessment of financial interest is not limited to

---

U.S.C. § 80b-1, *et seq.* (as well as claims for violation of the federal securities laws) in an effort to advance all appropriate claims on behalf of class members.

[14] In *In re Centerline*, 2008 U.S. Dist. LEXIS 36406, at *11, Judge Scheindlin held that the longer class period pled was not plausible and therefore the court would not determine financial interest based on that class period.  Here, the Streits' assertion that the loan increases their financial interest in this litigation is entirely plausible, and is typical of other class members who were compelled to take out ARS-related loans due to Defendants' wrongdoing.

[15]  Those factors are "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered."  *In re Bausch & Lomb*, 244 F.R.D. at 172.

those "traditional factors," and may include other considerations which are pertinent to a plaintiffs' financial incentive to litigate the case effectively.[16]

Furthermore, the Chandler movants' cavalier dismissal of the idea that those class members who were forced to participate in the UBS loan program may be able to recover damages flowing from the loans ignores the potential availability of such damages in this litigation. Excluding such damages at this early stage of the proceedings is patently inconsistent with a concern for the best interests of all the class members.

Movant Steven Oppenheimer ("Oppenheimer") complains that the Streits should not be appointed because "there are myriad variances among the approximately 100-200 different auction rate securities listed in the Streit Group's PSLRA certification…." Oppenheimer Opp. at 4. Oppenheimer fails to explain either the nature or significance of the alleged variances. In light of the fact that the same deception is alleged with respect to all ARS purchases, the fact that different securities were purchased does not make the Streits atypical, as "[t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality." *In re Fuwei*, 247 F.R.D. at 436 (quoting *In re Prudential*, 163 F.R.D. at 208). To the contrary, the fact that the Streits purchased many different types of UBS ARS confirms their typicality in a class action on behalf of all purchasers of UBS ARS during the Class Period. If one were to accept Oppenheimer's arguments, there would need to be a

---

[16] As discussed in the Streits' prior submissions, the ARS litigation is not the garden variety securities fraud case involving securities traded on an exchange where the market price dropped after a fraud related disclosure. As a result, the "traditional factors" normally referenced in a PSLRA financial interest analysis need not be the limit of what factors can be considered as pertinent to a plaintiffs "financial interest" here. *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (determining financial interest on the basis of the movants' aggregate trading during the class period rather than by reference to the prices at which the securities traded).

separate case for each ARS security, an enormously wasteful and totally impractical approach that none of the lead plaintiff movants supports.

## IV. THE STREITS HAVE THE MOST SOPHISTICATED UNDERSTANDING OF THIS LITIGATION AND GREATEST CONCERN FOR THE BEST INTERESTS OF CLASS MEMBERS

The Streits have evidenced a more sophisticated understanding of the issues in this litigation and more concern for the best interests of the class members than the other competing movants.  Unlike the Streits, the other movants have focused solely on recovering the face amount of the class' illiquid ARS,  but have ignored the fact that the interest rates on the ARS were much lower than the market rates that would have prevailed had the investing public understood that ARS were not cash equivalents.  *See* Streits Opp. at 8-10; Vellrath Decl.  Not only do these damages increase the amount that class members may recover on their unredeemed ARS, they would also allow the class members to recover their lost interest on their redeemed ARS.  Similarly, the other movants have ignored the potential availability of damages to certain class members flowing from their need to participate in the UBS loan program for ARS holders.

Only the Streits have taken steps to try to avoid the possible prejudice to the class that could occur if the *Kassover* action proceeds independently and ahead of the PSLRA cases.  Besides promoting efficiency, this approach avoids the risk of prejudicial adverse rulings and defense arguments over claim-splitting and claim preclusion.

## V. CONSOLIDATION OF THE *KASSOVER* ACTION WITH THE EXCHANGE ACT CASES WILL FACILITATE JUDICIAL ECONOMY AND AVOID POSSIBLE PREJUDICE TO THE EXCHANGE ACT CLASS MEMBERS

As set forth in the Streits' opening memorandum, consolidation is appropriate when actions involve common questions of law or fact.  Fed. R. Civ. P. 42 (a).  The Exchange Act cases and *Kassover* share two core questions of fact: (i) whether Defendants deceived investors

by misrepresenting the liquidity and risk profile of ARS; and (ii) the injuries resulting from that deception.[17]

The cases seek to represent essentially the same class members. Based on a longer statute of limitations period for the claims alleged, *Kassover* is brought on behalf of persons who purchased their UBS ARS between March 14, 2002 and the present. The first filed Exchange Act case is brought on behalf of persons who purchased ARS between March 21, 2003 and February 13, 2008. Thus, most of the members of the *Kassover* class are also members of the Exchange Act classes. Furthermore, the Exchange Act cases afford greater relief than *Kassover*, most particularly a damages remedy.[18]

There is a risk that if *Kassover* proceeds independently and is finally resolved before the Exchange Act cases become final, defendants will argue that the members of the *Kassover* class are barred from proceeding further as class members in the Exchange Act cases because to do so would violate the doctrine against claim splitting.[19] If the issue were raised, counsel for the Exchange Act class would certainly do their best to avoid such a draconian result. However, this Court can easily avoid the risk that the issue might be decided adversely to the Exchange Act

---

[17] The defendants in *Kassover* consist of UBS AG and one of its wholly-owned subsidiaries, UBS Financial Services, Inc. The Exchange Act cases name those two UBS entities as defendants as well as another UBS subsidiary, defendant UBS Securities LLC. Thus, the Exchange Act cases allege claims against all of the defendants in the *Kassover* action. The complaint filed by the Streits includes claims under both the IAA and the Exchange Act, thereby alleging the same (or at least substantially similar claims) against the defendants in *Kassover*.

[18] The IAA claims asserted in *Kassover* are not an adequate substitute for the securities fraud claims asserted in the Exchange Act cases. In addition to other differences between the two statutes, the Supreme Court has held that private actions under the IAA are limited to seeking rescission and may not recover damages. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 24 (1979).

[19] "A party must bring in one action all legal theories arising of the same transaction or series of transactions". (citations omitted) (emphasis omitted) *Coleman v. B.G. Sulze, Inc.*, 402 F. Supp. 2d 403, 419 (N.D.N.Y. 2005) citing *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (citing, *inter alia*, *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)). *See also Johnson v. Ashcroft*, 378 F.3d 164, 172 n.10 (2d Cir. 2004) (citation omitted) ("In civil suits a litigant must advance all available evidence and legal arguments relating to a claim or controversy in the context of a single proceeding."); *Power Travel Int'l, Inc. v. Am. Airlines, Inc.*, 02 Civ. 7434 (RWS), 2004 U.S. Dist. LEXIS 21802, at *12 (S.D.N.Y. Oct. 29, 2004) ("principle of res judicata applies to members of a class as it would to named plaintiffs.")

class by consolidating *Kassover* with the Exchange Act cases for all purposes.  *See Curtis v.*
*Citibank, N.A.*, 226 F.3d 133, 138 (2d. Cir. 2000).

The congressional policy embodied in the PSLRA strongly supports consolidation of
*Kassover* with the Exchange Act cases.  Even in the absence of any claim splitting issue, the
virtually total factual overlap between *Kassover* and the other actions creates a situation in which
the Court may decide crucial issues of law, discovery questions, or important motions (such as
summary judgment motions) in *Kassover* that, in practical terms, may be dispositive with respect
to the same issues in the Exchange Act cases.  In such a situation, the *Kassover* plaintiffs, rather
than the Court appointed lead plaintiff under the PSLRA, would, de facto, play the primary role
in litigating many of the crucial issues in the Exchange Act cases.  It is appropriate for this Court
to consolidate *Kassover* with the Exchange Act cases so that the Court appointed lead plaintiff
under the PSLRA will actually, and not just theoretically, be conducting the litigation on behalf
of the Exchange Act case class members.

Consolidation is also proper because it will promote judicial economy and avoid
duplication of discovery efforts among the parties.  *See Ferrari v. Impath, Inc*., No. 03 Civ. 5667
(DAB), 2004 U.S. Dist. LEXIS 13898, at *7-9 (S.D.N.Y. July 20, 2004) (citations and quotations
omitted).[20]  Absent consolidation separate trials will occur, and numerous motions may need to
be adjudicated twice when consolidation would require only one motion.[21]  Wasteful duplication

---

[20] Consolidation is particularly appropriate in the context of securities class actions if the complaints are based on a
common course of wrongful conduct and defendants will not be prejudiced.  See *Ferrari*, 2004 U.S. Dist. LEXIS
13898, at *6-7.  *See also Borenstein v. Finova Group*, 2000 U.S. Dist. LEXIS 14732, 191 * 9-14; *Takeda v.*
*Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Ca. 1999) ("[A] court must balance the savings of time and
effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result.").

[21] "Neither the PSLRA nor Rule 42 requires that pending suits be identical before they can be consolidated."
*A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 570 (D.N.J. 2003).  Indeed, courts have consolidated cases
asserting different causes of action where they were based upon common questions of law or fact.  *See, e.g.,*
*Schriver v. Impac Mortgage Holdings, Inc*., No. SACV 06-0031, 2006 U.S. Dist. LEXIS 40607, at * 4-6 (C.D. Cal.
May 1, 2006) (consolidating actions where there were derivative state law claims and Exchange Act claims);

of discovery will likely result, unless the Court places *Kassover* on the same discovery schedule as the Exchange Act cases.

Finally, consolidation will not prejudice the plaintiff in *Kassover,* who has already agreed to coordination of discovery. For this to be meaningful, at a minimum coordination would involve deferring any depositions in *Kassover* until the Exchange Act plaintiffs are also prepared to participate in those depositions. Any slight delay in *Kassover* resulting from the need to proceed on the same time schedule as the Exchange Act cases is vastly outweighed by the risk of possible prejudice to the Exchange Act class that would result if issues of claim splitting or claim preclusion ultimately materialized. Indeed, the *Kassover* plaintiffs cite to no authority whatsoever as to why these cases should not be consolidated.

As set forth in their opening memorandum, this Court should approve the choice of Milberg LLP and The Law Offices of George A. Shohet as Co-Lead Counsel of the IAA Claims as well as the Exchange Act claims. Although the *Kassover* Plaintiffs oppose Movants' selection, they cite no basis in fact or in law as to why Movants' request should be denied.

## CONCLUSION

For the reasons stated herein and in all of the prior submissions of the Streits, the Court should grant the Streits' motion in all respects, deny the motions of the competing movants, and consolidate the *Kassover* action with the Exchange Act cases for all purposes.

---

*Alexander v. Franklin Resource*s, *Inc.*, No. C 06-7121 SI, 2007 U.S. Dist. LEXIS 19727, at *7-10 (N.D. Cal. Feb. 14, 2007) (transferring pending securities fraud case because, *inter alia*, consolidation with New Jersey cases brought under the Investment Company Act, Investment Adviser Act and state law was likely given the same underlying factual predicate); *In re WorldCom, Inc. Secs. Litig*., No. 02 Civ. 3288 (DLC), 2002 U.S. Dist. LEXIS 27638, at *2 (S.D.N.Y. 2002) (ordering consolidation of securities and ERISA class actions with various non-class actions given the existence of common questions of law and fact).

Dated:  June 19, 2008

Respectfully submitted,

**MILBERG LLP**

By: /s/ Jerome M. Congress
Jerome M. Congress
Kent A. Bronson
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
Telephone:      (212) 594-5300
Facsimile:      (212) 868-1229
jcongress@milberg.com
kbronson@milberg.com

**MILBERG LLP**
Jeff Westerman (JW-6500)
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, CA 90071-3172
Telephone:      (213) 617-1200
Facsimile:      (213) 617-1975
jwesterman@milberg.com

**LAW OFFICES OF GEORGE A. SHOHET**
George A. Shohet
245 Main Street, Suite 310
Venice, CA 90291
Telephone:  (310) 452-3176
georgeshohet@gmail.com

***Counsel for Aric A. Streit and Mary Streit as
Trustees for the benefit of the Streit Living Trust
And Proposed Co-Lead Counsel for the Class***